UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

ROBERT SICURELLI, et al.,

                                Plaintiffs,

        -against-                             **ORDER**

                                               03-CV-4934 (SLT) (KAM)

JENERIC/PENTRON INC., et al.

                               Defendants.

------------------------------------------------------------------ X

**KIYO A. MATSUMOTO, United States Magistrate Judge:**

           This patent infringement action has been referred to the undersigned magistrate

judge for pretrial supervision.  This Order addresses (i) a motion to compel brought by three of

the defendants, Jeneric/Pentron, Inc., Pentron Clinical Technologies, LLC and Pentron

Corporation, Inc. (collectively, "Jeneric"), and plaintiffs' cross motion for a protective order

precluding discovery, of certain documents and information, including pre-litigation testing,

shared between non-party Ivoclar North America (docket nos. 87-92); (ii) plaintiffs' motion to

compel supplemental responses to Interrogatory No. 2 (docket nos. 104-105); and (iii) Jeneric's

motion to compel supplemental responses to Interrogatories Nos. 17-25 (docket nos. 85, 95).

Each motion was addressed during the Court's telephone conference with the parties on April 27,

2005.  The Court ruled as follows.


## I.  JENERIC'S MOTION TO COMPEL AND PLAINTIFFS' CROSS MOTION

           By Order entered September 20, 2004, the undersigned magistrate judge denied

without prejudice Jeneric's first motion to compel production, and plaintiffs' cross-motion for a protective order precluding discovery of certain documents and information, including pre-litigation testing, shared between non-party Ivoclar North America ("Ivoclar") and plaintiffs, "[b]ased on the inadequate showing by both parties regarding whether the work product privilege should protect the documents at issue." Docket no. 47 at 3. Jeneric's motion was based, in part, on its understanding that Ivoclar and plaintiffs had, prior to the commencement of the instant lawsuit, contemplated what Jeneric believed to be a commercial arrangement.

By renewed motion, Jeneric once again seeks to compel the production of certain documents exchanged between plaintiffs and Ivoclar. Plaintiffs again cross-move for a protective order for the same documents, on grounds of work product, and for the return of a document dated April 15, 1999,[1] alleged to have been "improperly obtained by Jeneric." Plaintiffs' Memorandum of Law in Opposition to Motion to Compel and in Support of Cross-Motion for Protective Order ("Plaintiffs' MOL") at 14. By Order entered April 4, 2005, plaintiffs were directed to submit for *in camera* review the documents that it claims are "confidential work product," and which Jeneric seeks to compel. Under cover of letter dated April 7, 2005, plaintiff submitted for *in camera* review nine documents, each separately designated herein as "*in camera* document" 1 through 9 (collectively, the "*in camera* documents").

---

[1]There are two different letters dated April 15, 1999: The first is from plaintiffs' patent counsel to plaintiffs and appears as *In camera* Document No. 1 to plaintiffs' April 7, 2005 letter. The second April 15, 1999 letter appears as Exhibit M to the Affirmation of Andrew C. Ryan, docket no. 88 ¶ 14. To the extent plaintiffs' cross motion for a protective order and return of the document is directed to the first letter from plaintiffs' counsel to plaintiffs, plaintiffs' motion is granted. For purposes of this order, however, plaintiffs' cross motion presumably addresses the second April 15 letter, from Ivoclar's patent counsel to plaintiffs' patent counsel.

In plaintiffs' Memorandum of Law (at 5) and during a conference on April 27, 2005 regarding the instant motions, plaintiffs confirmed that because *in camera* documents 2 and 7 have already been produced to Jeneric, issues concerning those documents are moot, and that they are not included in the plaintiffs' cross-motion for a protective order. The Court considers each of the other *in camera* documents in turn, following a discussion of the respective arguments of plaintiffs, Jeneric, and third-party Ivoclar, which seeks the Court's guidance regarding a subpoena duces tecum served on Ivoclar by Jeneric on April 12, 2004.

First, Jeneric argues in favor of production of the *in camera* documents on the grounds that such documents are not protected under the work product doctrine because they were prepared and shared pursuant to a "business venture[,]" and not in anticipation of litigation. Docket no. 87, Jeneric's Memorandum of Law in Support of Motion to Compel ("Jeneric's MOL"), at 15. Jeneric points to language in the "Confidentiality/Non-Disclosure Agreement" between plaintiffs and Alan S. Korman, General Counsel for Ivoclar, dated January 20, 1999 (the "Confidentiality Agreement"), which states in relevant part, "[t]he purpose of the Agreement, is to set forth the terms and conditions of the disclosure of certain proprietary/confidential information which may be discussed between Ivoclar . . . [and plaintiffs] . . . for the purpose . . . of entering into some mutually beneficial business relationship." Docket no. 88, Affirmation of Andrew C. Ryan ("Ryan Aff."), Ex. C. The Confidentiality Agreement makes no mention of potential litigation.

Plaintiffs argue that the work product privilege applies because the joint undertaking between plaintiffs and Ivoclar related primarily to the enforcement of plaintiffs' patent rights through anticipated litigation. Specifically, plaintiffs argue that Ivoclar was a

"partner" in the "enforcement activities" directed at Jeneric with the ability to "finance" such activities. Plaintiffs' MOL at 8; <u>see also</u> Letter dated July 13, 1999, annexed to Plaintiff's MOL at Ex. 1. That is, because plaintiffs and Ivoclar collaborated to pursue litigation against Jeneric, their work product should be protected under the so-called "common interest" doctrine which, plaintiffs argue, extends work product protection to the work product of all parties engaged in a common legal enterprise.

Second, Jeneric argues that, assuming *arguendo*, the common interest work product doctrine applies, Ivoclar may nevertheless unilaterally waive any privilege and produce the documents Jeneric seeks. Jeneric's MOL at 17-19. On the other hand, plaintiffs argue that Ivoclar may not unilaterally waive work product protection. Moreover, plaintiffs argue that because they "commissioned" Ivoclar's testing of Jeneric's allegedly infringing dental post, the documents related to testing are not Ivoclar's "own communication[s,]" but instead, are plaintiffs' communications. Plaintiffs' MOL at 11. Notably, plaintiffs fail to set forth any legal authority in support of this argument. Moreover, the Court's *in camera* review of the two tests at issue reveals that one of the tests was independently commissioned by Ivoclar, and the other test was commissioned by plaintiffs. Further, plaintiffs point out that Jeneric could have, and probably has, commissioned testing of its own dental post similar to that conducted by plaintiffs and Ivoclar.

Third, Jeneric argues that any work product privilege has been waived by placing the Ivoclar documents "at issue" to the extent that plaintiffs have indicated in their Fed. R. Civ. P. 26(a) Initial Disclosures their intention to rely on Ivoclar in support of their claim for damages. That is, if plaintiffs use the Ivoclar documents as a "sword," to support one element of their case,

the documents must be provided to Jeneric for all purposes, and cannot be shielded by the work product privilege. Plaintiffs argue that the privilege has not been waived because the documents have not been placed "at issue" for liability purposes because its Rule 26(a) disclosure named Ivoclar as a source of information related to damages, not liability. In addition, plaintiffs state that they "have no . . . intention to use the information at issue as a 'sword' in any phase of the case." Plaintiffs' MOL at 12. Thus, presumably, plaintiffs "will not rely on evidence at trial concerning the potential lawsuit against Jeneric" cited as the basis for the purported joint undertaking between plaintiffs and Ivoclar prior to the commencement of the instant litigation.

Lastly, Jeneric argues that any work product privilege should be overcome because it has a "substantial need" for the documents, given that Ivoclar's interpretation and understanding of the patents-in-suit is "highly relevant" to the issue of infringement due to Ivoclar's status as a "worldwide leader" in dental materials industry. Jeneric's MOL at 25. Further, Jeneric argues that it needs the documents to ascertain whether, in light of Ivoclar's analysis of the patents as communicated to plaintiffs, plaintiffs had a good faith basis to allegedly interfere with Jeneric's business, as counterclaimed by Jeneric. Plaintiff argues, somewhat inconsistently with its "common interest" theory, that "Ivoclar's opinion as to the merits of an infringement action against Jeneric is irrelevant to what plaintiffs believed [as to infringement] and therefore has no bearing on Jeneric's counterclaim[s.]" Plaintiff's MOL at 14.

In response to Jeneric's subpoena duces tecum dated April 12, 2004, Ivoclar submitted the following responses. By letter dated April 29, 2004 to Magistrate Judge Gold, Ivoclar sought guidance from the court regarding its obligations to comply with the subpoena duces tecum served by Jeneric (Ryan Aff. Ex. A). In its April 29, 2004 letter, Ivoclar stated that

it "no longer believes any of the information it provided pursuant to the Confidentiality Agreement is "Confidential" and therefore it has no objection to producing non-privileged documents relating to its early negotiations with Plaintiffs." Ryan Aff. Ex. A at 1-2. Ivoclar further states in its April 29, 2004 letter that "Ivoclar has no interest in maintaining the confidentiality of materials that have been exchanged with Plaintiffs and we believe that the subpoena supercedes the private obligations between the parties under the Confidentiality Agreement. . . ." Id. at 2. Ivoclar's April 29, 2004 then designates documents on its attached Exhibit 3, which Ivoclar claims "must be produced pursuant to the subpoena. Listed on Exhibit 3 is the April 15, 1999 letter from Ivoclar counsel to plaintiffs' counsel which plaintiffs contend was wrongfully obtained (Ryan Aff. Ex. M), and a letter dated June 2, 1999 from Ivoclar counsel to plaintiffs' counsel (*in camera* document 2). Ivoclar's April 29, 2004 letter further designates documents on its attached Exhibit 4, which Ivoclar claims are responsive to Jeneric's subpoena and would be produced but for Ivoclar's concerns relative to the Confidentiality Agreement and plaintiffs' objections. Listed on Ivoclar's Exhibit 4 are *in camera* documents 3 through 8. See Ryan Aff. Ex. A at 2.

More recently, in response to the renewed motions of plaintiff and Jeneric, Ivoclar submitted a "Response By Ivoclar Vivadent, Inc. To The Motion By Defendants To Compel Third Party Ivoclar North America To Comply With Subpoena," dated March 21, 2005 (Ivoclar Response), and a Declaration from Ivoclar's General Counsel, Vice President and Secretary, Alan S. Korman, Esq., dated March 17, 2005 ("Korman Decl."). Ivoclar's Response reiterates that a letter from Ivoclar's retained counsel dated June 2, 1999 (*in camera* document 2) "must be produced pursuant to the Subpoena" by Jeneric, and that Ivoclar would produce six other of the

disputed documents (*in camera* documents 3 through 8), "but for Plaintiffs'contentions relative to the Confidentiality Agreement." Ivoclar Response at 2-3, n.2.

### Discussion

The "common interest" doctrine,[2] is not an independent basis for privilege, but a limited exception to the waiver of the attorney-client privilege when a protected communication is disclosed to a third party outside the attorney-client relationship. United States v. Agnello, 135 F. Supp. 2d 380, 382 (E.D.N.Y. 2001) (Gershon, J.); Shamis v. Ambassador Factprs Corp., 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999). The doctrine typically applies when multiple persons are represented by the same attorney. Denney v. Jenkens & Gilchrist, No. 03 Civ. 5640, 2004 WL 2712200, at *5 (S.D.N.Y. Nov. 23, 2004). "However, the doctrine is not limited to such situations[,]" and can be applied "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). The common interest doctrine has been recognized by the Second Circuit as follows:

> A community of interest exists among different persons or separate corporations where they have an identical legal interest . . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial. The fact that there may be an overlap of a commercial and legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest.

Shamis v. Ambassador Factors Corp, 34 F. Supp. at 893 (quoting North River Ins. Co. v. Columbia Cas.Co., 1995 WL 5792 at *3 (S.D.N.Y. January 5, 1995)). Thus, "the doctrine applies where parties are represented by separate counsel but engage in a common legal

---

[2]Because the privilege may apply outside the context of actual litigation, what is often referred to as a "joint defense" privilege is more aptly termed the "common interest" doctrine. See United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989)

enterprise." Denny, 2004 WL 2712200, at *5 (quoting Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446 (S.D.N.Y. 1995)). The Confidentiality Agreement and the documents submitted for *in camera* review indicate that Ivoclar and plaintiffs did not share an identical interest, or evince a predominantly commercial, rather than legal interest.

The common interest doctrine has been narrowly construed. Indeed, "the Second Circuit follows a strict interpretation of the common interest rule, under which '[o]nly those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected.' " Agnello, 135 F. Supp. 2d at 382 (quoting Schwimmer, 892 F.2d at 243). The party asserting the common interest doctrine carries the burden of demonstrating the existence of "an agreement, though not necessarily in writing, embodying a cooperative and common enterprise towards an identical legal strategy." Lugosch v. Congel, 219 F.R.D. 220, 237 (N.D.N.Y. 2003).

The court determines that the Confidentiality Agreement is not an agreement to enter into an identical legal or commercial venture between plaintiffs and Ivoclar. Instead, by its own terms, the Confidentiality Agreement serves as a vehicle for exchanging and sharing "Confidential Information," as defined in paragraph 1 of the Agreement, for the purpose of allowing the parties to engage in "discussions with the possibility of entering into some mutually beneficial business relationship." Ryan Aff. Ex. C (emphasis added). Accordingly, the Court does not agree that the common interest rule may be applied here, or that Ivoclar is precluded from disclosing its own work product.

In addition to the Confidentiality Agreement and the documents submitted for *in camera* review, plaintiffs futher support their claim of common interest protection with the

declaration of Alan S. Korman, Esq., General Counsel to Ivoclar, dated March 17, 2005, which

states, *inter alia*, that, "[t]he purpose of Ivoclar's review of the materials and testing it conducted

and analyzed was to <u>consider</u> the <u>prospect</u> of Ivoclar participating in <u>potential</u> litigation against

Jeneric/Pentron based upon the patent rights owned by Sicurelli purportedly covering a fiber post

product sold by Jeneric/Pentron."  Docket no. 91, Korman Decl. ¶ 4 (emphasis added).  The court

finds that the Korman Declaration fails to support plaintiffs' position.  Far from demonstrating

that Ivoclar and the plaintiffs entered into an agreement solidifying a common legal and

commercial interest, the Korman Declaration instead indicates that Ivoclar's own review and

testing of materials was for Ivoclar's own interest in considering the prospect of potential

litigation with plaintiffs against Jeneric.  <u>See</u> April 15, 1999 letter from Neil M. Zipkin (Ivoclar's

retained counsel) to Alfred M. Walker (Plaintiffs' patent counsel) (Ryan Aff., Ex. M).

Moreover, Mr. Korman's Declaration states at paragraph 6 that "Ivoclar no longer believes that

any of the information reflected by the documents identified in Schedules of Exhibits 3 and 4,

originally submitted to the Court as attachments to Ivoclar's counsel's letter of April 29, 2004

(now attached to the Ryan Affirmation as Exhibit A), constitute confidential information as that

term is used in the Confidentiality Agreement."

   Even assuming, *arguendo*, that plaintiffs have demonstrated the applicability of

the common interest doctrine, Ivoclar is nevertheless "entitled to waive the privilege for [its] own

statements," and plaintiffs cannot preclude it from doing so.  <u>Agnello</u>, 135 F. Supp. 2d at 383

(citing <u>In re Grand Jury Subpoena Duces Tecum</u>, 112 F.3d 910, 922 (8th Cir. 1997) ("Although a

valid joint defense agreement may protect work product . . . , one party to such an agreement may

not preclude disclosure of work product by another party on whose behalf the work originally

was performed.  Nor can the parties, by agreement, broaden the scope of the privilege that the law allows.")); <u>see also</u>  <u>In re Grand Jury Subpoena</u>, 274 F.3d 563, 571 (1st Cir. 2001).  <u>See</u> Docket no. 92, Jeneric's Reply Brief in Support of Motion to Compel ("Jeneric's Reply") at 5.

The terms of the Confidentiality Agreement are consistent with the above authority.  Paragraph 3(e) provides, in relevant part, the following exception to the confidentiality obligations of Ivoclar and the plaintiffs: "The obligations . . . shall terminate with respect to any particular portion of the Confidential Information when either of the Participants can document that it was developed by employees or agents of a Participant independently of, and without reference to, any information or other information that the second Participant had disclosed in confidence to any third party. . . ."  Ryan Aff. Ex. C.

Plaintiffs assert that the First and Eighth Circuit authority upon which Jeneric relies is not controlling, and moreover, cite, among other authority, a Southern District of New York case for the proposition that "[w]here work product is shared among parties conducting a joint defense, the unilateral disclosure by one party does not waive the protection for parties that have not voluntarily disclosed <u>their</u> work product."  Plaintiffs' MOL at 10-11 (citing <u>In re In-Store Advertising Securities Litigation</u>, 163 F.R.D. 452, 456 (S.D.N.Y. 1995)) (emphasis added).  However, <u>Advertising</u> is inapposite to the present dispute because there, the *author* of the communications in issue had not consented to the disclosure of its statement by a party to a valid joint defense agreement.  <u>See</u> <u>Id.</u> at 458.  Here, Ivoclar is consenting to the disclosure of its own documents and communications.

With this background in mind, the Court will now consider each disputed *in camera* document in turn.

<u>In Camera</u> Document No. 1: Letter from Ivoclar's counsel to plaintiffs' counsel

Ivoclar voluntarily provided to Jeneric the April 15, 1999 letter (Ryan Aff., Ex. M) from Ivoclar's retained patent counsel to plaintiffs' patent counsel. <u>See</u> Ryan Aff. Ex. Q. Specifically, a letter dated February 24, 2004, from Ivoclar's retained counsel, Neil Zipkin, Esq., advised Jeneric's counsel that Ivoclar's General Counsel, Alan Korman, Esq., authorized the disclosure of the April 15, 1999 letter from Mr. Zipkin to Alfred M. Walker, Esq., plaintiffs' patent counsel. <u>Id.</u> Although the April 15, 1999 letter alludes to the possibility of pursuing joint litigation against Jeneric, as discussed above, work product protection over one's own work product may be waived, as Ivoclar's General Counsel did in disclosing its April 15, 1999 letter to Jeneric.

Moreover, the Confidentiality Agreement governing the exchange of confidential information between plaintiffs and Ivoclar expressly contemplates the right of each participant to disclose its own work product. <u>See</u> Ryan Aff. Ex. C. The Confidentiality Agreement terminates the participants' obligations to protect Confidential Information ". . . developed by employees or agents of a Participant [signatory to the Agreement] independently of, and without reference to, any information or other information that the second Participant had disclosed in confidence to any third party[.]" <u>Id.</u> ¶ 3(e). The April 15, 1999 Ivoclar letter, and Ivoclar's examination of Jeneric's allegedly infringing dental post, were created or developed by and for Ivoclar's sole benefit without reference to any information from plaintiffs, in connection with Ivoclar's consideration as to whether to enter into "an arrangement" with the plaintiffs. Ryan Aff. Ex. M. Because the April 15 letter indicates that Ivoclar, and not plaintiffs, "obtained [Jeneric's dental

post] from Jeneric/Pentron and had the same examined[,]" the letter falls within the above

exception to the Confidentiality Agreement. In any event, irrespective of its authority to disclose

its own information under the Confidentiality Agreement, Ivoclar was entitled to exercised its

right to disclose its own work product under the above-cited legal authority, and thereby provide

its April 15, 1999 letter to Jeneric's litigation counsel. <u>See</u> Letter dated February 24, 2004 from

Mr. Zipkin to William Cass, Esq., Ryan Aff., Ex. Q ("We have received authorization from Alan

Korman [Ivoclar's General Counsel] to send you a copy of the letter dated April 15, 1999 . . . .").

Accordingly, plaintiffs' cross-motion for a protective order for and return of Ivoclar's April 15,

1999 letter is denied, and Jeneric's motion to compel production of this document is granted.

<u>*In Camera* Document No. 2</u>

Plaintiffs have already produced *in camera* document no. 2 to Jeneric.

Accordingly, the Court need not address this document.

<u>*In Camera* Documents Nos. 3 and 4</u>

For the reasons set forth above with respect to the April 15, 1999 letter from Mr.

Zipkin to Mr. Walker, the Court denies plaintiffs' motion for a protective order and grants

Jeneric's motion to compel the letter dated April 29, 1999 from Mr. Zipkin to Mr. Walker (*in

camera* document no. 3) and the attached "Examination Report" commissioned by Ivoclar (*in

camera* document no. 4). Specifically, it appears that these documents were prepared or

developed by and for Ivoclar's sole benefit in order for Ivoclar to assess whether Ivoclar would

enter into "some mutually beneficial business relationship" with the plaintiffs. The April 29

letter demonstrates that Ivoclar independently commissioned the examination of Jeneric's dental

post, exercised its right to designate the examination results as "Confidential Information" under

the terms of its Confidentiality Agreement with plaintiffs, and then decided to share the information with plaintiffs.  According to the Declaration of Alan Korman, Esq., Ivoclar's General Counsel, Vice President and Secretary, "Ivoclar no longer believes that [the April 29, 1999 letter and enclosed examination] . . . constitute Confidential Information as that term is used in the Confidentiality Agreement."  Korman Decl. ¶ 6;  Ryan Aff., Ex. C.  Moreover, because there is no indication that these documents were created by or for plaintiffs' benefit, they appear to be Ivoclar's own work product, and therefore, as discussed above, Ivoclar may unilaterally waive work product protection over such documents.  Accordingly, plaintiffs' motion for a protective order is denied and Jeneric's' motion to compel *in camera* documents 3 and 4 is granted.

### *In Camera* Document No. 5

*In camera* document no. 5, a scanning electron microscopy ("SEM") examination conducted at the plaintiffs' request, shall remain protected.  Because the examination appears to have been commissioned by and for plaintiffs in their anticipation of litigation against Jeneric, it is privileged under the work product doctrine.  Under cover of letter dated June 22, 1999 (*in camera* document no. 8), Ivoclar received a copy the SEM examination pursuant to the Confidentiality Agreement, apparently in response to Ivoclar's April 15, 1999 Letter (Ryan Aff., Ex. M), in which Ivoclar invited plaintiffs to "provide [Ivoclar] with . . . evidence" suggesting findings "contrary" to what Ivoclar's own examination of Jeneric's dental post determined.  The Court finds that plaintiffs' SEM examination, *in camera* document no. 5, was developed by the plaintiffs in the context of the plaintiffs' potential litigation against Jeneric, see Denny, 2004 WL 2712200, at *5, and is protected from disclosure as plaintiffs' work product and may not be

disclosed by Ivoclar without plaintiffs' consent.  Moreover, because Jeneric may conduct its own SEM tests of its dental posts, Jeneric has failed to demonstrate a "substantial need" for document 5 sufficient to overcome work product protection.  However, to the extent that plaintiffs' expert report(s) rely on this SEM examination, thereby placing it "at issue," plaintiffs will be required to produce their SEM examination to Jeneric.  Accordingly, the Court grants plaintiffs' motion for a protective order and denies Jeneric's motion to compel *in camera* document no. 5 without prejudice, if and until plaintiffs' expert report(s) place this document at issue.

*In Camera* Document No. 6

*In camera* document no. 6, a letter dated February 14, 2000, from plaintiffs' patent counsel, Alfred Walker, Esq., to Ivoclar's retained counsel, Mr. Zipkin, shall be produced because it does not appear to have been created in anticipation of litigation, and therefore, is not protected by the work product privilege.  Instead, this letter itself states that it concerns a "commercial relationship" that "might" be entered into between plaintiffs and Ivoclar.  The letter contains no attorney thought processes, legal theories or litigation strategy, except that in a single sentence comprising the penultimate paragraph, litigation is briefly disscussed.  The Court denies plaintiff's motion for a protective order and grants Jeneric's motion to compel *in camera* document no. 6 with the following redactions because the document appears to have been created for and relate to a potential commercial, as opposed to common legal purpose.  The Court orders that plaintiffs may redact the letter's penultimate paragraph, which discusses litigation, before producing the document to Jeneric.

*In Camera* Document No. 7

Plaintiffs have already produced document no. 7 to Jeneric.  Accordingly, the

Court need not address this document.

<u>*In Camera* Document No. 8</u>

   *In camera* document no. 8 is a letter dated June 22, 1999, designated "Personal and Confidential," from plaintiffs' counsel to Ivoclar's counsel enclosing information pursuant to the terms of the Confidentiality Agreement. Plaintiffs have produced this document in extensively redacted form. Although litigation is not specifically mentioned either in this letter or in the information enclosed in plaintiffs' SEM test (*in camera* documents no. 5), both appear to have been developed by and for plaintiffs in the anticipation of potential litigation against Jeneric and, accordingly, are protected by the work product privilege. The information concerning the analysis of dental posts is available to Jeneric to the extent that Jeneric may conduct its own examination of the posts, and in this regard, Jeneric has failed to demonstrate a "substantial need" for this document sufficient to overcome work product protection. Accordingly, the Court grants plaintiffs' motion for a protective order over *in camera* document no. 8, as redacted by plaintiffs, and denies Jeneric's motion to compel production of this document in its unredacted form.

<u>*In camera* Document No. 9</u>

   *In camera* document no. 9 is a letter dated July 13, 1999, from Ivoclar's retained counsel to plaintiffs' counsel, in which Ivoclar is reacting to plaintiffs' work product, which plaintiffs produced to Ivoclar pursuant to the Confidentiality Agreement. Specifically, in *in camera* document 9, Ivoclar responds to and discusses in detail *in camera* document no. 5 (plaintiffs' analysis of dental posts) and *in camera* document no. 8 (plaintiffs' June 22, 1999 letter to Ivoclar enclosing and discussing plaintiffs' analysis of dental posts). Plaintiffs have

produced this document in redacted form. The Court grants plaintiffs' motion for a protective order to the extent plaintiffs have redacted this document, and denies defendants' motion to compel *in camera* document no. 9 in unredacted form.

The Court further rules that Ivoclar may testify as to its own examinations and communications, whether or not privileged, as well as testifying about all discussions concerning commercial and business transactions.

## II.  PLAINTIFFS' MOTION TO COMPEL SUPPLEMENTAL RESPONSES TO INTERROGATORY NO. 2

Plaintiffs request (docket no. 104) that the Court order Jeneric to supplement its response to Plaintiffs' Interrogatory No. 2, which seeks, *inter alia*, a description of each type or model of dental post manufactured, offered for sale or sold by Jeneric, and for each product, requests, *inter alia*, (1) a detailed description of the material used to manufacture the product; and (2) a detailed description of the process by which the product is manufactured.  Jeneric provided an answer and a supplemental answer to Interrogatory No. 2, which it designated "Confidential Information- Attorneys' Eyes Only," pursuant to a Confidentiality Order imposed by Magistrate Judge Gold on March 9, 2004.  In addition, Jeneric produced for a deposition Dr. Ajit Karmaker, an employee of Jeneric and the individual designated by Jeneric as having the most knowledge regarding the manufacturing process, whose deposition is scheduled to continue. Finally, Jeneric permitted plaintiffs' expert to visit, photograph and videotape its manufacturing facility, but did not allow the expert to touch the machines involved in its manufacturing process.

By letter dated March 2, 2005, plaintiffs advised Jeneric that its responses to

Interrogatory No. 2 were deficient to the extent that plaintiffs seek information concerning the locations in the silanation, pultrusion, and manufacturing processes where tension or stress is applied to the fibers which constitute the accused dental post, the means by which such tension or stress is applied and the "precise amount" of the tension or stress applied. See docket no. 104, Ex. 1. Plaintiffs also request the dimensions of the spools onto which the fibers in the silanation and pultrusion processes are wound, including the diameter of the spools when they are fully wound up with fibers and the diameter when the spools have no fibers. Id. Lastly, plaintiffs request that Jeneric identify the size and shape of the dies used in the pultrusion process as well as the specific fiber to resin ratio used in pultrusion. Id.

Jeneric contends that the requested data "has already been provided" to the extent that plaintiffs were permitted to inspect, photograph and videotape Jeneric's manufacturing process with an expert present. Jeneric further asserts that plaintiffs have taken the Fed. R. Civ. P. 30(b)(6) deposition of Dr. Karmaker concerning the specifics of Jeneric's manufacturing process. See docket no. 105 (excerpt of Karmaker deposition annexed as Ex. B). Jeneric also contends that providing the requested information would be burdensome.

Plaintiffs argue that the requested information is specific data which cannot be ascertained by reviewing photographs, videotapes or from a visual inspection of Jeneric's manufacturing facility. Moreover, plaintiffs claim that they could not have measured for the requested data without "stopping Jeneric's production line for several minutes[.]" Docket no. 104 at 1-2. As mentioned above, plaintiffs were not permitted to interfere with Jeneric's manufacturing process during their site visit.

The Court finds that the information requested in Ms. Fuentes' March 2, 2005

letter to Mr. Ryan is relevant to plaintiffs' claims of patent infringement and that providing such data would not be unduly burdensome to Jeneric. Moreover, the Court finds that to the extent that the requested information calls for specific data regarding where and how much tension or stress is applied to the fibers, or the size and diameters of the spools used during manufacture, such data cannot be ascertained by examining photographs or videotapes, nor could measurements have been made without stopping Jeneric's manufacturing process. Likewise, from a review of the excerpt of Dr. Karmaker's deposition provided to the Court by Jeneric, it appears that Dr. Karmaker cannot recall the precise amounts of tension used in the manufacture of the posts. <u>See</u> docket no. 105, Ex. B, Karmaker Dep. at 42, ll. 19-25 (Q: Can you quantify the amount of tension that's used . . . . A. I believe it's *about* 20 pounds.") (emphasis added). Accordingly, Jeneric shall permit plaintiffs to take the requested measurements in its manufacturing facility, or alternatively, provide supplemental responses to Interrogatory No. 2 as requested in Ms. Fuentes' March 2, 2005 letter to Mr. Ryan.

### III. JENERIC'S MOTION TO COMPEL SUPPLEMENTAL RESPONSES TO INTERROGATORIES NOS. 17-25 (docket no. 85)

By letter dated March 28, 2005 (docket no. 85), Jeneric requests an order "compelling plaintiffs to provide substantive answers to Interrogatories Nos. 17-25 of Defendants' Third Set of Interrogatories to Dr. Samuel Masyr" (Jeneric's Third Interrogatories), served on November 16, 2004. Those interrogatories seek the factual bases for plaintiffs' infringement contentions. Plaintiffs originally responded on February 28, 2005, and by referring to other responses by Plaintiffs to Jeneric's interrogatories (Docket No. 85, Ex. 1). Plaintiffs

then supplemented their responses in a fourth supplemental response to Interrogatory No. 1 to Jeneric's First Set of Interrogatories (Letter dated March 31, 2005 (Docket No. 95 ), Ex. 1). Jeneric complains that plaintiffs' referrals to its claim chart attached to plaintiffs' first interrogatory responses did not adequately provide the facts, data, observations and test results that serve as the bases for plaintiffs' contentions, and that the plaintiffs' reference to and promise of a fourth supplemental response had not yet been provided. Jeneric further requests that plaintiffs be compelled to state that they have no factual support other than the doctrine of equivalents, if they lack other factual support for their contentions.

Plaintiffs oppose Jeneric's motion to compel by letter dated March 31, 2005 (Docket no. 95), asserting that their responses provide more than is required by law and further provide Jeneric with fair notice of the bases for plaintiffs' infringement claims. Plaintiffs contend that they need not identify which of the documents produced by the parties, including Jeneric, supports or controverts its claims because, to do so would place undue burdens on plaintiffs and reveal their attorney work product, particularly because Jeneric is able to make its own observations and examinations of the allegedly infringing posts and its own conclusions regarding the documents. Plaintiffs claim that their fourth supplemental responses served on March 31, 2005, including supplements to its claims chart, and the eventual production of their expert report(s) will provide additional detail and specificity regarding their contentions. Plaintiffs further point out that Fed. R. Civ. P. 33(c) provides authority for the Court to defer ordering responses to contention interrogatories "until after designated discovery has been completed or until a pre-trial conference or other later time."

At the conference on April 27, 2005, plaintiffs stated that their recent

supplementation of their interrogatory responses represented their most complete analysis of the information and documents currently known to plaintiffs, and further acknowledged their ongoing obligation to supplement their discovery responses promptly after other documents or information become known to them.

The Court agrees that plaintiffs, at this time, need not respond further to Jeneric's Interrogatories Nos. 17-25. A review of the supplemental claims chart reveals adequately detailed information and references to documents regarding plaintiffs' infringement contentions. Plaintiffs' expert reports are expected to provide additional information regarding the specific factual bases for plaintiffs' infringement contentions. Moreover, both parties are to remain mindful of their ongoing obligations to supplement their discovery responses as additional information becomes known. Accordingly, the Court denies without prejudice Jeneric's motion to compel plaintiffs to provide substantive responses to Jeneric's contention Interrogatories Nos. 17-25. Plaintiffs will be required to supplement their responses no later than one week after the close of fact discovery.

## IV. CONCLUSION

Any objections to this Order must be filed with District Judge Townes, via ECF, within ten days. Failure to object within ten days of the date of entry will preclude appellate review by the District Court. See Fed. R. Civ. P. 72(a); see also Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038 (1992); Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989). Accordingly, this Order is stayed for ten days

from the date of its entry, and if objection is filed, until five days after the District Court issues its decision on such objection.

**SO ORDERED.**

_____/s/_____
KIYO A. MATSUMOTO
United States Magistrate Judge

Dated: May 3, 2005
          Brooklyn, New York