UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
ROBERT SICURELLI, et al.

                        Plaintiffs,

  -against-

JENERIC/PENTRON INC., et al.

                        Defendants.

------------------------------------------------------------------------ X

**ORDER**

03-CV-4934 (SLT) (KAM)

**KIYO A. MATSUMOTO, United States Magistrate Judge:**

This patent infringement action has been referred to the undersigned magistrate judge for pretrial supervision. This Order addresses a motion brought by three of the defendants, Jeneric/Pentron, Inc., Pentron Clinical Technologies, LLC and Pentron Corporation, Inc. (collectively, "Jeneric" or "Pentron"), to bifurcate discovery and trial.[1] Jeneric requests that discovery related to Jeneric's possible advice-of-counsel defense regarding plaintiffs' claim of willful infringement be deferred until the issue of liability has been resolved. See docket nos. 80, 93. Jeneric submitted opinions from its counsel for the Court's *in camera* review under cover of letter dated March 30, 2005. See docket no. 93. Plaintiffs oppose Jeneric's motion to bifurcate discovery and trial. See docket nos. 84, 98.

**I. BACKGROUND**

Plaintiffs, Drs. Robert Sicurelli and Samuel Masyr (collectively "plaintiffs"),

---

[1] Jeneric's motion to bifurcate the trial on issues of liability and damages is not addressed herein, as that decision rests within the discretion of the trial judge, the Honorable Sandra L. Townes.

-1-

allege in their complaint, among other things, willful infringement by Jeneric of five United States patents[2] allegedly invented and owned by plaintiffs pertaining to fiber reinforced dental posts. Prior to and during the course of this litigation, Jeneric obtained three written legal opinions ("the Opinions")[3] from its patent attorneys as to whether Jeneric's accused product, the "FibreKor" dental post, infringes plaintiffs' patents. It should be noted that the January 1999 and January 2004 Opinions were authored by persons associated with the law firm of Jeneric's trial counsel.

Although Jeneric may rely on an advice-of-counsel defense to counter plaintiffs' allegation of willful infringement, Jeneric seeks to defer its assertion of this defense because doing so would place at issue the Opinions, thereby waiving the attorney-client privilege relative to the advice of counsel. Jeneric acknowledges that if it were to assert the advice-of-counsel defense, the resulting waiver of the privileges may be "exceedingly broad." Citing Convolve, Inc. v. Compaq Computer Corp., 224 F.R.D. 98 (S.D.N.Y. 2004), but reserving its right to contest the scope of the waiver, Jeneric's concern is that asserting the advice-of counsel defense "waives the attorney-client privilege as to the subject matter of the advice disclosed," and that the waiver "extends...to the attorney who rendered the opinion creating the waiver, . . . [and] all

---

[2] United States Patent No. 5,518,399 (the "'399 Patent"); United States Patent No. 5,741,139 (the "'139 Patent"); United States Patent No. 5,915,970 (the "'970 Patent"); United States Patent No. 5,919,044 (the "'044 Patent"); and United States Patent No. 6,371,763 (the "'763 Patent" and collectively, the "Patents-in-Suit").

[3] The Opinions consist of (1) letter dated January 15, 1999 from Leah Reimer, Ph.D., Esq. to Joseph A. MacDougald, Esq., Jeneric's Director of Legal Affairs (the "January 1999 Opinion"), (2) letter dated January 13, 2004 from Dr. Reimer to Mr. MacDougald with exhibits volume (the "January 2004 Opinion"), and (3) letter dated April 21, 2004 from Barry Kramer, Esq. to Mr. MacDougald (the "April 2004 Opinion").

other attorneys who may have advised or communicated with the client on the same subject matter." Id. at 103. See docket no. 93, Letter Brief from William Cass, Esq., dated Mar. 30, 2004 ("Jeneric's Br."), at 6-7. Jeneric assets that a broad waiver at this stage of the litigation would "severely prejudice" Jeneric by allowing plaintiffs, who bear the burden of proof, to "receive an advance 'play book' of [Jeneric's] legal theories, strategies and arguments," and "tailor their infringement case by using Pentron's counsel's opinions." Id. at 8.

Plaintiffs oppose Jeneric's motion, arguing that bifurcation would be inefficient, and would unnecessarily complicate discovery and increase litigation costs. See docket no. 98, Letter Brief from Bradford J. Badke, Esq., dated Apr. 7, 2005 ("Plaintiffs' Br."), at 3-4. Moreover, plaintiffs argue that they would be unfairly prejudiced from developing their liability case against Jeneric's affirmative defense of laches and estoppel, which plaintiffs may overcome by proving that an alleged infringer relied upon the advice of counsel when engaging in the allegedly infringing conduct rather than upon a patentee's actions or inactions. Id. at 4 (citing Fuji Mach. Mfg. Co., Ltd. v. Hover-Davis, Inc., 982 F.Supp. 923, 925 (W.D.N.Y. 1997)). Plaintiffs dispute Jeneric's contention that its Opinions would provide plaintiffs with an advanced "play book" of defendant's legal theories, strategies and arguments regarding infringement because Jeneric has provided detailed non-infringement and invalidity positions in its interrogatory responses and cannot in good faith assert that the Opinions constitute a secret "play book." Plaintiffs' Br. At 5. Further, plaintiffs assert that because the January 15, 1999 Opinion relates to a different patent not involved in this case, "this opinion has no relevance to this case."

## II. DISCUSSION

As discussed above, this Court will not address the bifurcation of the trial because that decision is within the discretion of Judge Townes. Furthermore, because the previously assigned magistrate judge has already ruled that discovery on damages will be limited to "gross numbers" (Transcript for Initial Conference before Magistrate Judge Gold held on January 23, 2004 ("Tr."), at 11, ll.18-25), the Court views Jeneric's instant motion to "bifurcate" as a request to defer discovery related to the Opinions. Accordingly, the Court will treat Jeneric's motion as one for a protective order, pursuant to Fed. R. Civ. P. 26(c), as opposed to a motion to bifurcate pursuant to Fed. R. Civ. P. 42(b). See Plasmanet v. Apax Partners, Inc., No. 02 Civ. 9290, 2003 WL 21800981, at * 2 (S.D.N.Y. Aug. 5, 2003) (magistrate judge treating motion to bifurcate as motion for Rule 26(c) protective order).

Fed. R. Civ. P. 26(c) provides that "for good cause shown the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense [.]" The Court "can order a stay of discovery or provide other protections to the moving party, including ordering discovery take place in a particular sequence." Rofail v. U.S., 227 F.R.D. 53, 54-55 (E.D.N.Y. 2005) (citing Hasbrouck v. BankAmerica Housing Servs., 187 F.R.D. 453, 455 (N.D.N.Y. 1999)).

The Court acknowledges that invocation of the advice-of-counsel defense places at issue privileged communications between Jeneric and its opinion counsel, thereby waiving the attorney-client privilege as to the Opinions. On the other hand, if Jeneric decides not to assert the advice-of-counsel defense, thus not placing privileged communications at issue and thereby protecting them from disclosure, Jeneric may be required to forego a valid defense to plaintiffs'

allegation of willful infringement. Jeneric's potential dilemma of being forced to choose between a valid defense and the protection of its attorney-client communications is hardly novel or rare. See e.g., Valois of America, Inc. v. Risdon Corp., No. 95 Civ. 1850, 1998 WL 1661397, at *4 (D. Conn. 1998). The Federal Circuit, in Quantum Corp. v. Tandon Corp., 940 F.2d 641, 643-44 (Fed. Cir. 1991), observed in relevant part as follows:

> An accused infringer . . . should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera*, reveal that defendant is indeed confronted with this dilemma.

This Court has completed its *in camera* review of the Opinions and recognizes that Jeneric is indeed confronted with the so-called "Quantum dilemma". It appears that Jeneric's assertion of the advice-of-counsel defense and the resulting waiver of the Opinions at this stage in the litigation will result in prejudice to Jeneric by revealing its attorneys' "'play book' of . . . legal theories, strategies and arguments" on the issue of infringement. Jeneric's Br. at 8.

The Court agrees with plaintiffs' argument that willfulness discovery related to the Opinions also implicates the issue of Jeneric's liability. See Plaintiffs' Br. at 4-5; see also Kos Pharmaceuticals, Inc. v. Barr Laboratories, Inc., 218 F.R.D. 387, 392 (S.D.N.Y. 2003) ("the better view [is] to hold that the issue of willfulness is not sufficiently discrete and readily severable from matters of infringement . . . ."). Nonetheless, the Court determines that plaintiffs will not suffer prejudice from the protection of the Opinions at this time because, as plaintiffs concede, Jeneric has "provided detailed non-infringement and invalidity positions in its

interrogatory responses," thus making plaintiffs "aware of Jeneric's invalidity and infringement positions." Plaintiffs' Br. at 5. Plaintiffs have received the information to which they are entitled in discovery. Plaintiffs, however, are not also entitled at this time to Jeneric's legal theories and legal strategies discussed in detail in the Opinions of Jeneric's counsel. In addition, accepting plaintiffs' argument that the January 15, 1999 Opinion "relates to another patent not involved in this case," analyzes "the meaning of a technical term that is also contained in certain of the patents-in-suit," and thus "may not be relevant [to this case], let alone crucial," (Plaintiffs' Br. At 6), the Court determines that this Opinion is outside the scope of discovery. Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...."). Thus, irrespective of Jeneric's potential assertion of the advice-of-counsel defense and the resulting waiver of the privilege, the January 15, 1999 Opinion is not relevant, as Plaintiffs acknowledge, and thus need not be produced.

This Court is mindful of plaintiffs' concern that "bifurcating willfulness discovery would unduly delay resolution and substantially increase costs of this litigation . . . ." Plaintiffs' Br. at 3. Such efficiency and economy concerns may militate against bifurcation of discovery. The Court, however, has determined that an order protecting the Opinions appropriately balances Jeneric's dilemma, in choosing between waiving its attorney-client privilege to defend against plaintiffs' willful infringement claim or maintaining the privilege at the risk of being found to be a willful infringer, against plaintiffs' interest in preventing inefficiency, undue delay or substantial expense in discovery. Accordingly, the Court grants a protective order with respect to the Opinions pursuant to Fed. R. Civ. P. 26(c)(2), which authorizes the Court to order that "disclosure or discovery may be had only on specified terms and conditions, including

designation of the time or place." The Court's protective order governing the Opinions shall not be effective indefinitely but, instead, shall cease upon Jeneric's invocation of the advice-of-counsel defense. As discussed above, should Jeneric rely on this defense, its attorneys' Opinions will be place at issue, and any attorney-client privilege protecting such Opinions will be waived. If, on the other hand, Jeneric elects not to assert this defense, the Opinions will not be at issue, and will therefore remain privileged.

In order to reconcile plaintiffs' need to expeditiously and efficiently prosecute this case with Jeneric's desire to prevent plaintiffs from prematurely discovering the nature and content of the Opinions and its legal strategies, the Court contemplates, as a preliminary approach, the following procedure. Jeneric shall indicate whether it will assert the advice-of-counsel defense, either within five days of the close of liability discovery or, given that Jeneric has indicated its intention to move for summary judgment on liability, within five days of the resolution of such a motion. Of course, should Jeneric prevail on summary judgment, election of the advice-of-counsel defense will be moot. On the other hand, should Jeneric's contemplated summary judgment motion be denied, and Jeneric assert the advice-of-counsel defense, limited additional discovery concerning the Opinions will be required to ascertain whether the reliance on the Opinions was reasonable. The Court anticipates that such discovery will be expedited, focused and relatively brief and, therefore, will not result in inefficiency, undue delay or substantial expense to plaintiffs.

## III.  CONCLUSION

The Court concludes that Jeneric is confronted with the dilemma of choosing between a potentially valid defense to plaintiffs' claim of willful infringement and the protection of its attorney-client communications.  The Court further concludes that the prejudice to Jeneric, if it were required to disclose the Opinions of its counsel at this stage of the litigation, outweighs any prejudice to plaintiffs.  Accordingly, the Court grants a protective order over the Opinions to the extent that discovery concerning the Opinions will be deferred until Jeneric advises plaintiffs and the Court whether it will assert the advice-of-counsel defense, either within five days of the close of liability discovery or within five days of the resolution of any motion(s) for summary judgment.

**SO ORDERED.**
Dated: May 5, 2005
       Brooklyn, New York

/s/
**Kiyo A. Matsumoto**
United States Magistrate Judge
Eastern District of New York