UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

ROBERT SICURELLI, et al.,

                Plaintiffs,

  -against-                                   **ORDER ON MOTION FOR**
                                                    **RECONSIDERATION**

JENERIC/PENTRON INC., et al.                  03-CV-4934 (SLT) (KAM)

                Defendants.

------------------------------------------------------------------------ X
**KIYO A. MATSUMOTO, United States Magistrate Judge:**

      This patent infringement action has been referred to the undersigned magistrate judge for pretrial supervision. This Order addresses a motion brought by Dr. Robert Sicurelli and Dr. Samuel Masyr (collectively, "plaintiffs") requesting that this Court partially reconsider its May 3, 2005 Order with respect to *in camera* documents 1, 3 and 4, denying in part plaintiffs' motion for a protective order and granting in part defendants' Jeneric/Pentron, Inc., Pentron Clinical Technologies, LLC and Pentron Corporation, Inc. (collectively, "Jeneric") motion to compel production of nine documents. See docket no. 124, Plaintiffs' Motion and Memorandum of Law in Support of Motion for Reconsideration ("Pl. Recon. MOL"); see also docket no. 118, May 3, 2005 Order (the "Order"). This Court's specific findings and rulings are set forth in the Order, and therefore, the relevant facts, findings and rulings will not be repeated.

      Plaintiffs assert two grounds in support of their motion for reconsideration: (1) that this Court erred in ruling that there was no "common interest" work product privilege between plaintiffs and Ivoclar North America ("Ivoclar") (see Pl. Recon. MOL at 2), and (2) that

this Court's ruling is inconsistent in compelling *in camera* document nos. 1, 3 and 4, but protecting *in camera* document nos. 5, 8 and 9, due to the Court's purported misinterpretation of United States v. Agnello, 135 F. Supp. 2d 380 (E.D.N.Y. 2001). Id. at 2. The Court will address the parties' arguments and will set forth its rulings on plaintiffs' motion for reconsideration in turn.

## DISCUSSION

As Jeneric correctly points out, a motion for reconsideration, governed by Local Civil Rule 6.3 ("Rule 6.3"), is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Docket no. 125, Jeneric's Memorandum of Law in Opposition to Motion for Reconsideration ("Jeneric Recon. Opp'n"), at 2 (quoting In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 246 (S.D.N.Y. 2005) (internal citations omitted)); see also Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002). In a motion for reconsideration, the movant must demonstrate "controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." Montanile, 216 F. Supp. 2d at 342 (citing SEC v. Ashbury Capital Partners, L.P., No. 00-7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001)). "[T]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." DiLaura v. Power Auth. of State of N.Y., 982 F.2d 73, 76 (2d Cir. 1992) (quoting Virgin Atl. Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted)).

A motion for reconsideration, however, is not intended as a vehicle for a party dissatisfied with the court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with respect to issues already decided. See Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). Accordingly, the Court must narrowly construe and strictly apply Rule to avoid repeated consideration of repetitive arguments and duplicate rulings on previously considered issues, and to prevent the Rule from being used as a substitute for appealing a final order. See Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 250 (S.D.N.Y. 1999).

Upon receiving a motion for reconsideration, the Court may (1) deny the motion, thus leaving the original decision unaltered (id.) (citing Lehmuller v. Inc. Village of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997)), (2) grant the motion for the limited purpose of "'considering the effect of an overlooked matter,' and after doing so may affirm and/or clarify the original decision[,]" (id.) (quoting Lehmuller, 982 F. Supp. at 136)), or (3) "having granted a motion to reconsider, the Court may vacate the original decision." Id. (citing Morin v. Trupin, 823 F. Supp. 201, 203 (S.D.N.Y. 1993)). "The decision to grant or deny the motion is within the sound discretion of the district court." Dietrich v. Bauer, 76 F. Supp. 2d 312, 327 (S.D.N.Y. 1999) (citing Schaffer v. Soros, No. 92-1233, 1994 WL 592891, at *1 (S.D.N.Y. Oct. 31, 1994)). Moreover, "[t]he court may act *sua sponte* and reconsider its own orders." NAACP v. Acusport Corp., 216 F. Supp. 2d 59, 61 (E.D.N.Y. 2002) (citing Fort Knox Music, Inc. v. Baptiste, 257 F.3d 108, 111 (2d Cir. 2001)).

**Common Interest Doctrine**

In its Order, the Court found that the communications between plaintiffs and Ivoclar were not protected under the common interest work product doctrine. See Order at 8. Plaintiffs do not dispute the Court's adherence to the principle that the key consideration in determining whether the common interest doctrine applies here is whether the plaintiffs satisfied their burden of establishing that they had an identical, not similar, legal, and not solely commercial, interest with Ivoclar. Id. at 7 (citing Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999)). After reviewing plaintiffs' submissions, namely the Confidentiality Agreement between plaintiffs and Ivoclar, the declarations of plaintiffs and Mr. Korman (General Counsel to Ivoclar), as well as the documents submitted for *in camera* review, the Court concluded that the evidence did not support the existence of an identity of interest between plaintiffs and Ivoclar.

Specifically, the Court determined that "[f]ar from demonstrating that Ivoclar and the plaintiffs entered into an agreement solidifying a common legal and commercial interest, the Korman Declaration instead indicates that Ivoclar's own review and testing of materials was for Ivoclar's own interest in considering the prospect of potential litigation with plaintiffs against Jeneric." Order at 9 (citing April 15, 1999 letter from Neil M. Zipkin to Alfred M. Walker (Ryan Aff., Ex. M) and docket no. 91, Korman Decl. ¶ 4 ("The purpose of Ivoclar's review of the materials and testing it conducted and analyzed was to <u>consider</u> the <u>prospect</u> of Ivoclar participating in <u>potential</u> litigation against Jeneric/Pentron based upon the patent rights owned by Sicurelli purportedly covering a fiber post product sold by Jeneric/Pentron.") (emphasis added). Indeed, the declarations of Drs. Sicurelli and Masyr both indicate that their communications with

Ivoclar related to a "potential arrangement involving the marketing of a product covered by the patents[,]" and that such potential arrangement would have involved licensing of the patents as well as joint enforcement activities. See Docket no. 90, Sicurelli Decl. ¶ 4; docket no. 90, Masyr Decl. ¶ 3.

Plaintiffs correctly note that the common interest doctrine protects communications made as part of a joint legal enterprise regardless of whether such enterprise results in actual litigation. See PL. Recon. MOL at 2. The Court, however, did not base its decision on whether the discussions between plaintiffs and Ivoclar resulted in actual litigation. Rather, the evidence established that the plaintiffs and Ivoclar each acted independently in support of their individual interests, to determine whether to enter into a common enterprise with the other. In the Court's view, the contingent nature of the discussions between plaintiffs and Ivoclar never even reached the nascent stages of an identical legal and/or commercial enterprise between these parties. That is, the Court determined from the entire record before it that Ivoclar, at most a potential licensee, and plaintiffs, the purported patent owners, never shared an identical legal interest, and therefore, their communications were not made as part of a joint legal enterprise, as plaintiffs claim. See Shamis, 34 F. Supp. at 893 (quoting North River Ins. Co. v. Columbia Cas. Co., 1995 WL 5792, at *3 (S.D.N.Y. Jan. 5, 1995)). Accordingly, the Court denies plaintiffs' motion to reconsider the finding that plaintiffs and Ivoclar did not engage in an identical or common legal enterprise.

**Reconsideration of Ruling on *In Camera* Document nos. 1, 3 and 4**

Plaintiffs argue that the granting of Jeneric's motion to compel *in camera*

document no. 1 (Letter dated April 15, 1999 from Mr. Zipkin (Ivoclar's retained counsel) to Mr. Walker (plaintiffs' patent counsel) (attached to Ryan Aff. as Ex. M))[1], document no. 3 (cover letter dated April 29, 1999 from Mr. Zipkin to Mr. Walker) and document no. 4 ("Examination Report" commissioned by Ivoclar attached to document no. 3), is inconsistent with the Court's granting of a protective order over *in camera* document nos. 5, 8 and 9. See Pl. Recon. MOL at 3. Specifically, plaintiffs note that because the Court found that no common interest exists between plaintiffs and Ivoclar, any communications between these parties "would not be protected[.]" Id. To the extent that plaintiffs call for an explanation of the Court's Order with respect to *in camera* document nos. 5, 8 and 9, the Court's explanation, albeit constrained in light of the *in camera* review, is set forth below.

The Court granted Jeneric's motion to compel *in camera* document nos. 1, 3 and 4 because the record established that Ivoclar and plaintiffs did not share an identical legal or commercial interest. Rather, document nos. 1, 3 and 4 were created or commissioned independently by and for Ivoclar, without the participation of the plaintiffs, and using information obtained independently by Ivoclar.

Moreover, the Court determined that the terms of the Confidentiality Agreement governing the exchange of confidential information between plaintiffs and Ivoclar for "the purpose of discussions with the possibility of entering into some mutually beneficial business relationship," expressly contemplated the right of each participant to disclose independently

---

[1] Plaintiffs have not clarified or responded to footnote no. 1 of the Court's Order stating that the April 15, 1999 letter submitted as *in camera* document no. 1 was different from the April 15, 1999 letter described above. Document no. 1 of plaintiffs' *in camera* submissions was a letter from plaintiffs' patent counsel, Mr. Walker, to plaintiffs.

developed information.  See Order at 11-12 ("The Confidentiality Agreement terminates the participants' obligations to protect Confidential Information '. . . developed by employees or agents of a Participant [signatory to the Agreement] independently of, and without reference to, any information or other information that the second Participant had disclosed in confidence to any third party[.]'" (Quoting Confidentiality Agreement at ¶ 3(e) (brackets in original Order)). Thus, even if the Court had found the existence of a common interest work product privilege between plaintiffs and Ivoclar, Ivoclar, as the party that either independently commissioned or created *in camera* document nos. 1, 3 and 4, was entitled to waive any privilege it may have over such documents.  See United States v. Agnello, 135 F. Supp. 2d 380, 383 (E.D.N.Y. 2001).

Presupposing the existence of a common legal interest, plaintiffs argue that Ivoclar did not prepare *in camera* document nos. 1, 3 and 4 for its own interest because Ivoclar did not have any interest in the plaintiffs' patents and thus could not have brought a patent enforcement lawsuit on its own.  See Pl. Recon. MOL at 4.  Plaintiffs' argument only underscores the absence of an identical legal interest because the record before the Court establishes that Ivoclar never agreed to become a licensee of, and thus obtain an interest in, plaintiffs' patents.  Nor had Ivoclar decided to engage in an identical legal enterprise with plaintiffs to enforce plaintiffs' patents.  Instead, the record before the Court demonstrates that Ivoclar acted independently of plaintiffs with respect to the creation of *in camera* document nos. 1, 3 and 4, to assess for its own benefit whether its independent interests would be served by entering into a joint enterprise with plaintiffs, in which Ivoclar, as a licensee of plaintiffs' patents, would agree to share an identical legal interest with plaintiffs in the enforcement and marketing of their patents.  "Only those communications made in the course of an ongoing

common enterprise intended to further the enterprise are protected." Agnello, 135 F. Supp. 2d at 382 (citations omitted). Thus, the Court will not disturb its previous determination that plaintiffs and Ivoclar never achieved a common enterprise "towards an identical legal strategy." See Order at 8 (quoting Lugosch v. Congel, 219 F.R.D. 220, 237 (N.D.N.Y. 2003)).

Even assuming, *arguendo*, that plaintiffs established that they and Ivoclar shared an identical legal or commercial interest, they do not refute the Court's determination under Agnello, that Ivoclar could still unilaterally waive its own privileged documents.[2] Furthermore, the Court denied plaintiffs' motion for a protective order pursuant to Fed. R. Civ. P. 26(c) regarding *in camera* document nos. 1, 3 and 4, given Ivoclar's position that it did not object to the production of the documents, and given plaintiffs' failure to demonstrate their need for a protective order pursuant to Fed. R. Civ. P. 26(c). Accordingly, because plaintiffs present no facts or law that the Court overlooked in determining that Ivoclar and plaintiffs did not share an identical legal or commercial interest, the Court denies plaintiffs' motion to reconsider its ruling with respect to *in camera* document nos. 1, 3 and 4.

**Ruling on *In Camera* Document nos. 5 and 8**

Plaintiffs assert that because the Court found that the common interest doctrine does not protect Ivoclar's communications with plaintiffs, it is inconsistent to rule that *in camera*

---

[2]The Court acknowledges that it attributed a quote from In Re Grand Jury Subpoena, 274 F.3d 563 (1st Cir. 2001) to In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910 (8th Cir. 1997). Nevertheless, as Jeneric points out, "[t]his is immaterial" because both cases stand for the same proposition – that a party, even where there is a common legal interest, remains free to disclose his own communications. See Jeneric's Recon. Opp'n at 3-4, n.1. Moreover, the Eighth Circuit's Grand Jury Subpoena Duces Tecum is cited by the First Circuit's Grand Jury Subpoena. See id.

document nos. 5, 8 and 9 may be protected from disclosure, given that plaintiffs' communication of these documents to Ivoclar waives, as plaintiffs concede, plaintiffs' claimed work product privilege over such documents. See Pl. Recon. MOL at 3. Although the Court declined to find in its Order that plaintiffs met their burden of establishing the existence of a common legal interest between plaintiffs and Ivoclar, it granted plaintiffs' motion for a protective order regarding documents 5, 8 and 9 pursuant to Fed. R. Civ. P. 26(c).

With respect to *in camera* document no. 5, an SEM examination of dental posts commissioned by plaintiffs, the Court's Order accepted plaintiffs' claim that document no. 5 was plaintiffs' own work product because plaintiffs commissioned the test in their ongoing effort to induce Ivoclar to agree to enter into a joint legal and commercial undertaking, despite the factual, as opposed to legal nature of the test. Although thought processes of attorneys are entitled to protection under the work product doctrine, and underlying facts may be discoverable, (see Upjohn Co. v. United States, 449 U.S. 383, 395 (1981)), courts have determined that purely factual material, devoid of any indication of an attorney's thought processes, may be afforded work product protection "except upon a showing of need, albeit a more diluted showing than may be required for more sensitive work product." Golden Trade, S.r.L. v. Jordache, 143 F.R.D. 508, 511 (S.D.N.Y. 1992) (citing In re John Doe Corp., 675 F.2d 482 (2d Cir. 1982)).

In its Order, the Court determined that plaintiffs had established that *in camera* document no. 5 was work product because the record established that plaintiffs commissioned the test to aid them in their anticipated litigation (whether or not Ivoclar actually entered into a joint enterprise with plaintiffs in which they would achieve an identical legal interest in enforcing the patents and advancing common commercial interests). The Court further determined that

Jeneric had failed to demonstrate substantial need for *in camera* document no. 5. Moreover, *in camera* document no. 8 was also designated as work product because it reflects plaintiffs' patent counsel's thought processes concerning and reactions to plaintiffs' SEM examination, *in camera* document no. 5.

Despite plaintiffs' disclosure to Ivoclar of *in camera* document nos. 5 and 8, and the resulting waiver of any work product privilege that plaintiffs have asserted with respect to such documents, the Court exercised its discretion to protect the research commissioned by plaintiffs and their counsel's analysis of that research. Although plaintiffs did not establish that disclosure of *in camera* document nos. 5 and 8 would cause plaintiffs annoyance, embarrassment, oppression or undue burden or expense, Fed. R. Civ. P. 26(c)(7) permits the Court to order that "confidential research . . . not be revealed or be revealed only in a designated way." When determining whether such information merits a protective order, courts may consider, among other factors, "the measures taken to guard the secrecy of the information[.]" Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot., 224 F.R.D. 53, 56-57 (D. Conn. 2004) (citing Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd., 529 F. Supp. 866, 891 (E.D. Pa. 1981)). Accordingly, because plaintiffs took steps to protect the confidentiality of their research (document no. 5), and their analysis of that research (document no. 8), by disclosing it to Ivoclar pursuant to the terms of the Confidentiality Agreement, the Court was satisfied that plaintiffs demonstrated good cause for the issuance of a protective order over *in camera* document nos. 5 and 8. The Court, on reconsideration, is not persuaded that its determination regarding *in camera* document nos. 5 and 8 is inconsistent with its ruling regarding *in camera* document nos. 1, 3 and 4.

**Ruling on *In Camera* Document no. 9**

Previously, the Court granted plaintiffs' motion for a protective order over, and denied Jeneric's motion to compel, *in camera* document no. 9 in its unredacted form. This document, which was produced in redacted form, is a letter dated July 13, 1999, from Ivoclar's retained counsel, Mr. Zipkin, to plaintiffs' patent counsel, Mr. Walker, in which Ivoclar responds to plaintiffs' SEM examination of dental posts (*in camera* document no. 5), based on Ivoclar's review of the SEM examination, and *in camera* document no. 8 (plaintiffs' June 22, 1999 letter discussing plaintiffs' SEM examination).

On reconsideration, the Court vacates its prior ruling protecting the redacted material in *in camera* document no. 9 because, as plaintiffs assert, that ruling was inconsistent with its ruling regarding *in camera* document nos. 1, 3 and 4. Although plaintiffs did not seek reconsideration of the Court's decision regarding *in camera* document no. 9, as previously noted, "[t]he court may act *sua sponte* and reconsider its own orders." Acusport, 216 F. Supp. 2d at 61 (citing Baptiste, 257 F.3d at 111).

For the first time, after a three month exchange of correspondence with plaintiffs, Ivoclar, in its July 13, 1999 letter, states that "Ivoclar does wish to participate in the enforcement of the patent rights of Drs. Sicurelli and Masyr[,]" and adds that its "interest is merely as a partner in the enforcement activities with, perhaps, a future interest in making a product under such patent." This letter establishes Ivoclar's earliest affirmative statement of interest in the creation of a common legal identity between plaintiffs and Ivoclar, by articulating that its commercial interest in plaintiffs' patent would be limited to patent enforcement activities. Ivoclar then extends to plaintiffs an invitation for an offer, by requesting that plaintiffs advise

Ivoclar "of the general terms of the commercial relationship that your clients would like to enter into with Ivoclar . . . ." Ivoclar's invitation, made toward the end of plaintiffs' discussions with Ivoclar, fails to demonstrate that they had ever achieved the "identical" legal interest required for the application of the common interest doctrine. See Shamis, 34 F. Supp. 2d at 893.

Because the Court has found that a common legal interest was never achieved, and given that Ivoclar does not object to the disclosure of its own communications, the Court must vacate its prior ruling with respect to *in camera* document no. 9, and grant Jeneric's motion to compel this document in its unredacted form. Furthermore, the Court declines to find that plaintiffs have demonstrated good cause for the issuance of a protective order pursuant to Fed. R. Civ. P. 26(c)(7), because Ivoclar's July 13, 1999 letter, although informed by plaintiffs' own research (their SEM examination), reflects the thought processes of Ivoclar's retained counsel, which Ivoclar has no interest in protecting. Accordingly, the Court orders that *in camera* document no. 9 be produced without redactions.

## **CONCLUSION**

For the reasons set forth above, the Court denies plaintiffs' motion for reconsideration as to *in camera* document nos. 1, 3 and 4, and vacates its prior Order with respect to *in camera* document no. 9. *In camera* document no. 9 shall be produced to Jeneric without redactions.

**SO ORDERED.**
Dated: June 16, 2005
       Brooklyn, New York

                                              /s/
                                      **Kiyo A. Matsumoto**
                                      United States Magistrate Judge
                                      Eastern District of New York