UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
DR. ROBERT SICURELLI and
DR. SAMUEL MASYR,

                           Plaintiffs,

      -against-

JENERIC / PENTRON, INC., et al.,

                          Defendants.
------------------------------------------------------------------------ X

**MEMORANDUM & ORDER**

03-CV-4934 (SLT) (KAM)

MATSUMOTO, United States Magistrate Judge:

         Defendants Jeneric/Pentron Inc., Pentron Clinical Technologies LLC and Pentron

Corporation (collectively, "Jeneric"), seek an order (1) compelling Drs. Robert Sicurelli and

Samuel Masyr (collectively, "plaintiffs") to answer deposition questions concerning plaintiffs'

answers to contention interrogatories and responses to requests for admissions, and (2) imposing

sanctions against plaintiffs' counsel Bradford J. Badke, Esq. ("Mr. Badke" or "plaintiffs'

counsel"), pursuant to 28 U.S.C. § 1927 ("§ 1927") and Fed. R. Civ. P. 30 ("Rule 30"), for his

conduct during the depositions of the plaintiffs, including the costs and attorneys' fees associated

with re-deposing the plaintiffs.


                              **BACKGROUND**

         By letter dated September 12, 2005, counsel for Jeneric, William J. Cass, Esq.

("Mr. Cass"), moved for an order compelling plaintiffs to answer deposition questions

concerning plaintiffs' answers to contention interrogatories and responses to requests for

admissions, and further requested that the Court sanction plaintiffs' counsel for allegedly

-1-

interfering with Jeneric's examination of the plaintiffs.  (See Docket No. 131, Letter of William J. Cass, Esq. dated September 12, 2005 ("Cass Sept. 12 Letter"), at 1.)  More specifically, Jeneric alleges that plaintiffs' counsel "interfer[ed] with the fair examination of deponents" by "constantly interrupt[ing] the depositions with improper instructions not to answer, meritless objections, and overall contentious, abusive and unprofessional behavior" toward defendants' counsel.  (Id. at 1.)  The source of this alleged interference was a dispute which arose between counsel concerning the "proper scope of the [plaintiffs'] continued depositions."  (Id. at 1-2.)

The dispute concerning the proper scope of the plaintiffs' continued depositions was discussed at a telephone conference with the Court on August 30, 2005, initiated by counsel from Dr. Sicurelli's deposition, who sought a ruling as to the proper scope of questioning.  Since their first depositions in April 2004, plaintiffs had provided, *inter alia*, multiple supplemental responses to Jeneric's First Set of Interrogatories, including contention interrogatories, and responses to Jeneric's First Set of Admissions.  Accordingly, the Court "ruled that defendants were entitled to question the witness about discovery obtained since plaintiff's first deposition[,]" held on April 9 - 10, 2005.  (Id. at 1-2; see Minute Entry for Telephone Conference held before Kiyo A. Matsumoto on August 30, 2005.)  Thus, within the broad scope of discovery prescribed by Fed. R. Civ. P. 26, defendants were entitled to probe the plaintiffs' knowledge of facts relevant to the claims and defenses in this action, in order to obtain relevant discovery that would supplement plaintiffs' multiple written responses to Jeneric's longstanding discovery demands.

Jeneric alleges that despite the Court's ruling, plaintiffs' counsel continued to instruct the witnesses not to answer questions regarding discovery that was obtained since the

plaintiffs' first depositions and thus was properly within the scope of the Court's ruling. Jeneric further asserts that plaintiffs' counsel objected improperly to questions that he contended were not appropriate for fact witnesses in patent lawsuits. (Cass Sept. 12 Letter, at 2.)

In support of their request for sanctions, and to demonstrate that plaintiffs' counsel disrupted plaintiffs' depositions, Jeneric contends that plaintiffs' counsel appears on approximately 76% of the pages (86 pages out of 112) of the transcript of Dr. Sicurelli's deposition, and 67% (67 pages out of 99) of the transcript of Dr. Masyr's deposition with statements other than objections as to form or requests to the reporter to have a question read back. (Id. at 4.) Jeneric enumerates that plaintiffs' counsel's allegedly disruptive actions included instructing Dr. Sicurelli not to answer at least thirteen times and instructing Dr. Masyr not to answer at least sixteen times. (Id. at 4.) Jeneric further asserts that plaintiffs' counsel also made argumentative and unprofessional comments to opposing counsel such as, "You really scare me now . . . You've totally got me shaking in my shoes now" (Transcript of Deposition for Dr. Robert Sicurelli filed under seal ("Sicurelli Tr."), at 16, li. 9-12), as well as one outright insulting comment: "Was that while you were in traffic court, Mr. Cass?[,]" referring to Mr. Cass's prior work experience (id., at 89, li. 20-21). Jeneric further claims that plaintiffs' counsel's unprofessional conduct also included walking out of the room with plaintiff Dr. Masyr in the middle of his deposition. (Transcript of Deposition for Dr. Samuel Masyr filed under seal ("Masyr Tr."), at 65-66.)

Plaintiffs contend that their counsel's objections, instructions not to answer and overall conduct were justified under the circumstances. In support of their contention, plaintiffs cite to their agreement with Jeneric governing the scope of the depositions, orders of this Court

dated May 3, 2005 and August 30, 2005, and the allegedly harassing and provocative conduct of Jeneric's counsel during their depositions. (Docket No. 134, Letter of Bradford J. Badke, Esq., dated September 23, 2005 ("Badke Sept. 23 Letter").)

## **DISCUSSION**

### **Grounds for Imposing Sanctions**

Defendants rely on two grounds in support of their requests for sanctions: 28 U.S.C. § 1927 and Fed R. Civ. P. 30.[1] Section 1927 provides that:

> Any attorney who so multiplies the proceedings in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added). While § 1927 is a general, umbrella provision which permits a court to impose sanctions for any attorney misconduct that causes delay during litigation, Rule 30 specifically governs attorney misconduct that arises in the context of a deposition. Rule 30(d)(1) provides, in pertinent part, that: "[a]ny objection during a deposition must be stated *concisely* and in a *non-argumentative* and *non-suggestive manner*." Fed. R. Civ. P. 30(d)(1) (emphasis added). Rule 30(d)(3) enforces this provision by providing sanctions for its violation:

> [i]f the court finds that any impediment, delay, or other conduct has *frustrated the fair examination* of the deponent, it may impose upon the persons responsible

---

[1]The Court notes that Fed. R. Civ. P. 37(b), while not raised by defendants, also provides a basis for seeking sanctions. Sanctions are available under Rule 37(b)(2) where "a party . . . fails to obey an order or permit discovery." Rule 37(b)(2) allows a court to impose monetary sanctions in the form of "reasonable expenses, including attorney's fees," unless the Court finds that the offending party's failures were "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2).

an appropriate sanction, including reasonable costs and attorney's fees incurred by the parties as a result thereof.

Fed. R. Civ. P. 30(d)(3) (emphasis added).

## Sanctions Under Section 1927

The purpose of § 1927 is to deter attorneys from engaging in dilatory tactics by imposing sanctions for any conduct during litigation that causes unnecessary delay or generates needless proceedings.  See Nike, Inc. v. Top Brand Co. Ltd., 216 F.R.D. 259, 276 (S.D.N.Y. 2003); Unique Concepts, Inc. v. Brown, 115 F.R.D. 292, 293 (S.D.N.Y. 1987).  Courts have interpreted § 1927 as requiring a "*clear showing of bad faith* on the part of the attorney."  See Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996) (citation omitted) (emphasis added); Phillips v. Mfrs. Hanover Trust Co., No. 92 Civ. 8527, 1994 U.S. Dist LEXIS 3748, at *3-4 (S.D.N.Y. Mar. 29, 1994) (in context of deposition).  Courts have found a clear showing of bad faith when an attorney's actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) (citation omitted); see also Phillips, 1994 U.S. Dist LEXIS 3748, at *4; Unique Concepts, 115 F.R.D. at 293.

A court's determination whether an attorney's conduct was so completely without merit that it amounts to a clear showing of bad faith for purposes of § 1927 ultimately involves a case-by-case analysis based on the specific facts presented.  Courts in the Second Circuit typically consider three factors:  (1) the *extent and pervasiveness* of the interruptions, as evidenced by the number of times that the attorney appears on the transcript; (2) the *character* of the interruptions (e.g., whether they included personal attacks on opposing counsel, or were

merely groundless objections); and (3) the *effect* of the attorney's conduct (e.g., whether the deposition was entirely destroyed or merely prolonged). See generally Unique Concepts, 115 F.R.D. at 292; Morales v. Zondo Inc., 204 F.R.D. 50, 53-55 (S.D.N.Y. 2001).

For example, in Unique Concepts, the court found a clear showing of bad faith and imposed sanctions under § 1927 where: (1) counsel's pervasive interruptions, appearing on 91% of the deposition, included (2) silencing of witnesses, obstructive demands for explanations from the examiner, abusive personal attacks on opposing counsel, and "boasting about his performance in other non-related litigation in a lengthy, self-serving diatribe." 115 F.R.D. at 293. In Unique Concepts, the court found that the attorney's misconduct was so extensive that it "destroyed" the deposition by rendering it "hopelessly flawed by improprieties." Id. at 294. The court determined that such conduct was so completely without merit, that it must have been undertaken solely to harass the deponent and delay the deposition, and thus rose to the level of bad faith. Id. Similarly, in Brignoli v. Balch, Hardy & Scheinman, Inc., the court found bad faith and imposed sanctions under § 1927 where, *inter alia*, the character of counsel's interference with a deposition included interjecting substantive testimony in the client's stead and speaking objections, even after the court had prohibited them, and were so pervasive that they caused the deposition to drag on for eight days. 126 F.R.D. 462, 466 (S.D.N.Y. 1989).

In contrast to the foregoing, courts have declined to find a clear showing of bad faith in less severe circumstances despite findings that counsel's objections were groundless or improper and caused unnecessary delay. In Phillips, the court declined to impose sanctions under § 1927 where the extent of counsel's interference amounted to interjecting 49 times during an hour and a half and appearing on 60% of the transcript with objections other than an objection

as to form, many of which were baseless.  1994 U.S. Dist. LEXIS 3748, at *8.  The court held

that although the character of counsel's conduct during the deposition was "inappropriate and at

times even obnoxious[,]" it was not so egregious as to rise to the level of sanctionable conduct

because the character of her objections were not so "blatantly vituperative as to indicate she was

acting "in bad faith, vexatiously, wantonly or for oppressive reasons."  Id., at *11-12 (quoting

Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240 (1975) (internal quotation marks

omitted)).  In addition, the court found that counsel's interference did not have the effect of

preventing the deposition from being completed.  Id.  Similarly, in Am. Fun & Toy Creators v.

Gemmy Indus. Corp., No. 96 Civ. 799, 1997 US Dist. LEXIS, 12419, at *32, the court held that

an attorney's improper conduct during the deposition of a witness in a patent infringement case,

which included conferring with the witness on two occasions while questions were pending and

walking out of the room on one occasion, while inappropriate, did not rise to the level of bad

faith under § 1927 because the conduct was "not so outrageous as to destroy the deposition."

        Applying the first factor in the § 1927 analysis, the number of times that the

attorney appears on the transcript, plaintiffs' counsel appears on approximately 76% of the pages

of the Sicurelli transcript and approximately 67% of the Masyr transcript with statements other

than objections to form or requests to the court reporter to have a question read back.  (See Cass

Sept. 12 Letter, at 4.)  While the extent of plaintiffs' counsel's interruptions alone are not

determinative, they are closer to Phillips, where the court did not impose sanctions for

interruptions covering 60% of the transcript, than to Unique Concepts, where the court imposed

sanctions for interruptions covering 91% of the transcript.  Compare 1994 U.S. Dist. LEXIS

3748, at *8 with 115 F.R.D. at 293.

With respect to the second factor, the character of plaintiffs' counsel's interruptions primarily involved objections and instructions to the witnesses not to answer resulting from plaintiffs' counsel's constricted view of the permissible scope of the depositions, despite the Court's August 30 ruling clarifying the matter, as stated above.  (See Cass Sept. 12 Letter, at 2, 4.)  Jeneric's counsel explains that at the time of plaintiffs' first depositions in April 2004, Jeneric did not have the benefit of plaintiffs' substantive responses to Jeneric's contention interrogatories and requests for admissions regarding their infringement allegations.  (Id. at 2-3.)  Given that plaintiffs responded to Jeneric's discovery demands, in a series of supplemented responses, after their first depositions in April 2004, the Court's August 30, 2005 order, that Jeneric could question the witnesses about discovery obtained since plaintiffs' first depositions, contemplated that Jeneric would have adequate latitude to propound deposition questions that were informed by plaintiffs' multiple subsequent discovery responses, even if Jeneric's questions touched on subject matter that could have been asked at plaintiffs' first depositions.   Plaintiffs' counsel's repeated interruptions, objections, instructions not to answer and demands for explanations at plaintiffs' August depositions, were not warranted either by the letter or spirit of this Court's August 30, 2005 order, or the broad scope of discovery prescribed by Fed. R. Civ. P. 26(b).

Counsel for plaintiffs also justifies his conduct by relying on the Court's May 3, 2005 order denying Jeneric's motion to compel plaintiffs to provide supplemental responses to Jeneric's third set of interrogatories and Jeneric's requests for admissions, which sought the factual bases for plaintiffs' infringement claims.  (Badke Sept. 23 Letter, at 2-3.)  Plaintiffs previously had objected to further supplementation of their interrogatory responses, asserting

that their anticipated fourth supplemental discovery responses and experts' reports would provide additional detail and specificity regarding their claims. The Court's May 3, 2005 order, denying Jeneric's motion to compel plaintiffs to provide supplemental interrogatory responses, certainly did not foreclose Jeneric from eliciting at plaintiffs' subsequent depositions further elaboration on plaintiffs' responses to Jeneric's discovery, particularly because, as noted above, Jeneric received several voluminous supplemental discovery responses from the plaintiffs following their first depositions. Although plaintiffs' counsel appears to have misinterpreted the Court's orders, his objections were not so completely without merit as to require the conclusion that he willfully mischaracterized the Court's orders solely to prolong, delay or otherwise hinder the course of the plaintiffs' depositions in bad faith.

Plaintiffs further explain their counsel's conduct by asserting that Jeneric was not entitled to seek plaintiffs' testimony regarding facts relating to their responses to contention interrogatories and requests to admit because their responses either would reveal attorney-client communications or work product. (Badke Sept. 23 Letter, at 3.) Thus, plaintiffs' counsel justifies his instructions not to answer, in part, on grounds that the answers would have revealed attorney-client communications or work product. (Id. 7.) The attorney-client privilege protects from disclosure confidential communications made between a lawyer and his client for the purpose of obtaining or providing legal advice or services. See United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). The privilege attaches: "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except

the protection be waived." United States v. Int'l Bhd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997) (internal quotation marks and citation omitted). "[S]ince the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403 (1976). To be privileged, a communication either must be from a client to an attorney or, in the case of communications from an attorney to a client, must include confidential information conveyed to the lawyer from the client. "[T]he privilege seeks to protect a relationship wherein legal advice is sought by a client who communicates in confidence for the purpose of obtaining such advice." In re Colocotronis Tanker Sec. Litig., 449 F. Supp. 828, 831 (S.D.N.Y. 1978). The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. See Upjohn Co. v. United States, 449 U.S. 383, 396 (1981); In re Six Grand Jury Witnesses, 979 F.2d 939, 944 (2d Cir. 1992).

Apart from what plaintiffs may have learned from communications regarding legal advice within the attorney-client relationship, Jeneric was entitled to probe the plaintiffs' knowledge of relevant underlying facts, based upon plaintiffs' involvement in developing their dental posts, and plaintiffs' observations of Jeneric's Fibrekor dental post. Although Jeneric's counsel repeatedly and properly attempted without success to elicit testimony regarding Dr. Masyr's own observations of the Fibrekor post, plaintiffs' counsel interjected with instructions to invoke the attorney-client privilege regarding his observations. (Maysr Tr., at 25, li. 24; 27, li. 1-5; 29, li. 18; 30, li. 1-4.)

Plaintiffs' counsel also objected repeatedly to questions regarding plaintiffs' responses to contention interrogatories and requests for admissions relating to the interpretation

of their patent claims, on grounds that the questions were improper for a fact witness, sought

information protected by the attorney-client and work product privileges, or were not relevant.

(Maysr Dep., at 28, 42, 45; Badke Sept. 23 Letter, at 3.).  Plaintiffs' reliance on Phillips v. AWH

Corp., 415 F.3d 1303 (Fed. Cir. 2005), in support of their assertion that an inventor's testimony

has little or no relevance to the meaning of the claim is misplaced to the extent the Federal

Circuit instructs in pertinent part as follows:

> We have made clear . . . that the ordinary and customary meaning of a claim term
> is the meaning that the term would have to a person of ordinary skill in the art in
> question at the time of the invention, i.e., as of the effective filing date of the
> patent application. [Citations omitted.]
>
> The inquiry into how a person of ordinary skill in the art understands a
> claim term provides an objective baseline from which to begin claim
> interpretation. [Citation omitted.]  That starting point is based on the well-settled
> understanding that inventors are typically persons skilled in the field of the
> invention and that patents are addressed to and intended to be read by others of
> skill in the pertinent art. [Citation omitted.]  In re Nelson, 47 C.C.P.A. 1031, 280
> F.2d 172, 181 (1960) ("The descriptions in patents are not addressed to the public
> generally, to lawyers or to judges, but, as [35 U.S.C.] section 112 says, to those
> skilled in the art to which the invention pertains or with which it is most nearly
> connected.").

Id. at 1313.  Although extrinsic evidence, in the form of dictionaries, treatises and expert

testimony can be useful to the court in claim construction, the Federal Circuit cautioned that

extrinsic evidence, in general, is less reliable than the patent and its prosecution history in

determining how to read claim terms.  Id. at 1318.  "Nonetheless, because extrinsic evidence can

help educate the court regarding the field of the invention and can help the court determine what

a person of ordinary skill in the art would understand claim terms to mean, it is permissible for

the district court in its sound discretion to admit and use such evidence."  Id. at 1319.

Consequently, because extrinsic evidence may be admissible, Jeneric is entitled to discover

whether plaintiffs are inventors skilled in the art, the facts relevant to plaintiffs' understanding of

the claim terms, the nature and qualities of the dental posts at issue and the manner in which Jeneric's posts allegedly infringed the patents at issue.

Third, with respect to the effect of the attorney's misconduct, although plaintiffs' counsel's interference did not have the effect of entirely destroying the depositions, it did significantly frustrate the progress of and Jeneric's ability to complete the depositions. In addition to the repeated interruptions by plaintiffs' counsel, counsel's unprofessional and sarcastic comments personally directed toward Mr. Cass, and his walking out of the deposition room surely impeded the progress of the deposition.

In Unique Concepts, the court imposed sanctions under § 1927 where the attorney's personal attacks on opposing counsel included calling him "an obnoxious little twit." 115 F.R.D. at 293. Similarly, the court imposed sanctions in SS&J Morris, Inc. v. I. Appel Corp., where counsel's comments included such statements as, "Bend over. I will pin a medal on you for your noble efforts." No. 97 Civ. 6938, 2000 U.S. Dist. LEXIS 10381, at *15 (S.D.N.Y. July 26, 2000). Plaintiffs' counsel's comments in the present case (e.g. "You really scare me now . . . You've totally got me shaking in my shoes now." (Sicurelli Tr., at 16) and "Was that while you were in traffic court, Mr. Cass?" (Sicurelli Tr. p. 89, ln. 20-21)), were sarcastic, unprofessional and insulting. Similarly, walking out of the room with Dr. Masyr in the middle of Dr. Masyr's deposition (Masyr Tr., at 65-66) was improper, thwarted the progress of the deposition and added to the tension between counsel, however, this particular act does not warrant sanctions under § 1927 because it did not completely destroy the deposition. See Gemmy, 1997 US Dist. LEXIS 12419, at *32.

Based upon the foregoing analysis, plaintiffs' counsel's conduct during the depositions of Drs. Sicurelli and Masyr was not so completely without merit as to require the conclusion that the conduct was undertaken to harass or delay or for some improper purpose. Thus the conduct of plaintiffs' counsel at plaintiffs' August 2005 depositions does not rise to the level of a *clear* showing of bad faith required for the imposition of sanctions under § 1927. See Oliveri, 803 F.2d at 1273; Phillips, 1994 U.S. Dist LEXIS 3748, at *4; Unique Concepts, 115 F.R.D. at 293. Accordingly, the Court denies Jeneric's motion for sanctions pursuant to § 1927.

**Sanctions Under Rule 30**

While the conduct of plaintiffs' counsel does not, on balance, evince the clear showing of bad faith required for imposing sanctions under § 1927, the Court, in its discretion, finds that sanctions under Rule 30(d)(3), in the form of requiring plaintiffs' counsel to pay the costs associated with re-deposing the witnesses are appropriate under these circumstances. Cf. Phillips, 1994 U.S. Dist. LEXIS 3748, at *11 (declining to award sanctions under either § 1927 or Rule 30 for counsel's continued, improper objections during a deposition, but noting that Rule 30 sanctions were a "closer question.")

Unlike the case law governing sanctions under § 1927, for purposes of Rule 30(d)(3), a clear showing of bad faith on the part of the attorney against whom sanctions are sought is not required. Instead, the imposition of sanctions under Rule 30(d)(3) requires only that the attorney's conduct frustrated the fair examination of the deponent. Indeed, the Advisory Committee Note to the 1993 amendment of Rule 30(d) makes clear that, "the making of an excessive number of unnecessary objections [at a deposition] may itself constitute sanctionable

conduct" under Rule 30(d)(3).  The decision to impose sanctions against an attorney for improper conduct during a deposition is within the discretion of the court.  See Morales, 204 F.R.D. at 53.

In Hague v. Celebrity Cruises, Inc., the court declined to impose sanctions under Rule 30(d)(3) for "heated exchanges" among counsel during a deposition because they were "brief and did not significantly frustrate the progress of the examination."  No. 95 Civ. 4648, 2001 WL 546519, at *3 (S.D.N.Y. 2001).  Similarly, in Phillips, the court noted that counsel's voluminous, unwarranted and often argumentative objections "verge[d] on frustrating the fair examination" of the deponent, but declined to impose sanctions because opposing counsel was not prevented from completing the deposition.  1994 U.S. Dist. LEXIS 3748, at *11.

By contrast, in Morales, the court found that counsel's conduct frustrated the fair examination of the deponent and imposed sanctions under Rule 30(d)(3), where counsel's pervasive interruptions, while not necessarily in bad faith, included repeated improper instructions to the witness not to answer.  204 F.R.D. at 53-54.  The court noted, "[i]f counsel objected to what he regarded as forays into matters that were not . . . the subject of the deposition, he could have sought a ruling from the court.  He was not free simply to pepper the proceedings with interruptions and directions not to answer."  Id. (brackets omitted) (quoting Learning Int'l Inc. v. Competence Assurance Sys., No. 90 Civ. 2032, 1990 U.S. Dist. LEXIS 12419, at *12-13 (S.D.N.Y. Dec. 13, 1990)).

In the present case, to the extent that plaintiffs' counsel's objections, demands that Jeneric's counsel justify his questions, and instructions not to answer were grounded in his mistaken belief that certain questions were not within the scope of the Court's orders, or were

improper for a fact witness, he should have sought a clarification or further ruling from the Court on the matter, rather than continuing to impede the progress of the deposition. Plaintiffs' counsel does not adequately explain his failure to seek a ruling from the Court regarding questions that he repeatedly claimed were in violation of the Court's orders or otherwise exceeded the proper scope of discovery. Plaintiffs' counsel's unprofessional conduct and inappropriate *ad hominem* comments are particularly troubling to the Court. His unprovoked personal attack upon opposing counsel's legal experience was unprofessional and unwarranted. (See Sicurelli Tr., at 89. li. 20-21.) His sarcastic and taunting comment to opposing counsel, "You really scare me now . . . You've totally got me shaking in my shoes now," (Sicurelli Tr., at 16, li. 9-12) and walking out of the room with Dr. Masyr in the middle of the deposition (Masyr Tr., at 65-66), also were unprofessional and inappropriate. The Court cannot accept plaintiffs' counsel's explanation that his conduct was necessary to "defuse" the situation and protect his clients from harassment. (Badke Sept. 23 Letter, at 10.)

    Contrary to plaintiffs' contentions, the transcripts of plaintiffs' August 2005 depositions indicate that Jeneric's counsel maintained a restrained and professional demeanor, and did nothing to provoke plaintiffs' counsel's conduct, or harass and threaten the plaintiffs. The Court disagrees with plaintiffs' counsel that statements by Jeneric's counsel that he would have to seek sanctions in light of plaintiffs' counsel's conduct were made to "provoke a dispute and undermine the relationship between plaintiffs and their counsel." (Badke Sept. 23 Letter, at

7.[2])  Rather, Jeneric's counsel attempted to warn plaintiffs' counsel that he would seek sanctions if plaintiffs' counsel persisted with his conduct.

Although the Court has determined that plaintiffs' counsel's conduct did not rise to the level of bad faith for purposes of 28 U.S.C. § 1927, his conduct was a breach of counsel's role as an officer of this Court.  (See Local Civil Rule 26.5 for the Eastern District of New York ("Counsel are expected to cooperate with each other, consistent with the interests of their clients, in all phases of the discovery process and to be courteous in their dealings with each other . . . .")).  Counsel's conduct frustrated the fair examination of the witnesses by disrupting their depositions and unnecessarily creating a contentious and unpleasant atmosphere.  While plaintiffs' counsel's actions were not in bad faith, his conduct nonetheless impeded the fair examination of Drs. Sicurelli and Masyr, and accordingly, both witnesses must be re-deposed in order for defendants to obtain the discovery that was properly within the scope of their depositions.

## CONCLUSION

For the reasons set forth above, the Court finds that the conduct of plaintiffs' counsel does not rise to the level of vexatious and bad faith conduct required to impose sanctions under § 1927.  The Court, however, in its discretion, finds that sanctions are appropriate under Fed. R. Civ. P. 30(d)(3), and orders plaintiff's counsel to pay the costs, but not attorneys' fees,

---

[2]At plaintiffs' request, the Court, reluctantly, has considered and rejected plaintiffs' assertions that the conduct of Jeneric's counsel at plaintiffs' earlier and August depositions, the depositions of other witnesses, and before the Court was "threatening and unprofessional," "inflammatory" or "particularly egregious."  (Badke Sept. 23 Letter, at 8-10.)

associated with re-deposing Drs. Sicurelli and Masyr.  Furthermore, based upon the foregoing, Jeneric's motion for an order compelling plaintiffs' to respond to deposition questions "concerning Plaintiffs' answers to contention interrogatories and responses to requests for admissions," is granted.  The plaintiffs shall submit to a deposition of no more than five hours each, no later than January 31, 2006.

**SO ORDERED**
Dated: December 30, 2005
        Brooklyn, New York

_____/s/_____
**Kiyo A. Matsumoto**
United States Magistrate Judge
Eastern District of New York