UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
DR. ROBERT SICURELLI and
DR. SAMUEL MASYR,                          MEMORANDUM & ORDER

                       Plaintiffs,                    03CV4934(SLT)(KAM)

      -against-

JENERIC/PENTRON, INC.,
PENTRON CLINICAL TECH., LLC,
PENTRON CORP., INC., AND
COLTENE/WHALEDENT, INC.,

                       Defendants.
--------------------------------------------------X
TOWNES, U.S.D.J.

      The facts and procedural history underlying the instant dispute are set forth in greater detail in Magistrate Judge Matsumoto's order dated December 30, 2005 (the "Ruling"), imposing sanctions on Plaintiffs' counsel Bradford J. Badke, Esq. ("Badke") and granting Defendants' motion to compel Plaintiffs to respond to certain questions, familiarity with which is assumed, and those facts are incorporated by reference herein. (*See* Ruling.)

      Upon consideration of Judge Matsumoto's order to which Plaintiffs object, the releveant deposition transcripts and the written and oral submissions of the parties, and for the reasons that follow, Plaintiffs' objections are denied and Ruling is affirmed in its entirety.

## DISCUSSION

      "A magistrate...may issue orders regarding nondispositive pretrial matters." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Id.* "The district court reviews such

orders under the 'clearly erroneous or contrary to law' standard." *Id.* (*quoting* 28 U.S.C. § 636(b)(1)(A)).

"An order is 'clearly erroneous' only if a reviewing court, considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed; an order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Knitting Fever, Inc. v. Coats Holding Ltd.*, 2005 WL 3050299, at *3 (E.D.N.Y. Nov. 14, 2005) (internal citations omitted). "This standard is highly deferential...and only permits reversal where the magistrate abused his discretion." *Id.*; *see also Schwartz v. Metropolitan Property and Casualty Ins. Co.*, 393 F. Supp. 2d 179, 180 (E.D.N.Y. 2005).

Plaintiffs' objections to the sanctions imposed by Judge Matsumoto include (a) that the depositions were not "fair" under Rule 30(d)(3), and thus, sanctions were unavailable; (b) that counsel's objections and instructions not to answer were proper under Rule 30(d)(1), and thus unsanctionable; and that (c) Judge Matsumoto misapplied the law in imposing sanctions.

      A.    *Fairness of Examination*

Plaintiffs argue that Judge Matsumoto's imposition of sanctions was clearly erroneous and contrary to law, in part, because William Cass, defense counsel ("Cass" or "Defense Counsel") did not conduct a "fair examination" of the witness under Rule 30(d)(3) of the Federal Rules of Civil Procedure ("Federal Rules") which reads as follows:

> If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof.

Fed. R. Civ. P. 30(d)(3). Plaintiffs claim that Defense Counsel's examination was not fair

because "he attempted to elicit information outside the scope of discovery as set by (i) the agreement between counsel limiting the scope of plaintiffs' continued depositions; (ii) the May 3, 2005 Order limiting discovery on plaintiffs' responses to contention interrogatories; and (iii) the August 30, 2005 Order limiting the scope of the depositions to new discovery." (Plaintiffs' Objections to the Magistrate Judge's Ruling of December 30, 2005 ("Objections") at 7.) The Court will address in turn the effect, if any, of the alleged agreement and Judge Matsumoto's Orders on the fairness of Defense Counsel's examination.

1. *Agreement Between Counsel*

Plaintiffs argue that the parties entered into an agreement governing the scope of the August 30 and August 31, 2005 depositions. (Objections at 8.) Plaintiffs refer to this agreement frequently and believe its "intentional breach" by Defendants "evinces bad faith" in that Defense Counsel asked "unfair" questions "prohibited" by the agreement. (*Id.*) The documents comprising the alleged agreement are the following:

a. A December 29, 2004 letter from Badke to Defense Counsel stating, *inter alia*, "Plaintiffs do not object in theory to continued depositions provided the depositions are limited in time and to subject matter that could not have been addressed at the original depositions, regardless of whether plaintiffs were actually asked questions on a particular topic." (Objections, Ex A at Internal Exhibit 3.)

b. A February 22, 2005 letter from Plaintiffs' counsel Gloria Fuentes containing the same language. (*Id.* at Internal Ex, 4.)

c. Defendants' response thereto: "With regard to your letter of February 22, 2005, although we are not obligated to limit the scope of our deposition beyond the limits imposed by the Federal Rules of Civil Procedure, it is our intention to ask the plaintiffs about discovery produced since their original depositions in April of 2004." (Objections, Internal Exhibit 5.)

Plaintiffs' argument that these communications constitute a legally-enforceable agreement to limit the scope of the deposition beyond that which Defendants would have otherwise been entitled is unpersuasive and unsupported by any offer of case law by Plaintiffs. Also unpersuasive is the argument that these three documents so significantly bear on the "fairness" of the witness examinations that took place on August 30 and 31, 2005 that the Magistrate's failure to discuss the "fairness" requirement of Rule 30(d)(3) was in error.

2. *May 3, 2005 Order*

Plaintiffs also argue that Defendants were not conducting a "fair" examination because, on May 3, 2005, Judge Matsumoto denied Defendants' motion to compel Plaintiffs to provide substantive responses to Defendants' contention Interrogatories Nos. 17-25 (the "May 3 Order"). Plaintiffs claims that Defendants were attempting "a clear end run around" the May 3 Order in "an improper attempt to obtain information already denied defendants by the Magistrate Judge." (Objections at 9.) The May 3 Order reads, in relevant part:

> The Court agrees that plaintiffs, *at this time*, need not respond further to Jeneric's Interrogatories Nos. 17-25....Plaintiffs' expert reports are expected to provide additional information regarding the specific factual bases for plaintiffs' infringement contentions. *Moreover, both parties are to remain mindful of their ongoing obligations to supplement their discovery responses as additional information becomes known.*

4

May 3 Order at 20 (emphases added).  The emphasized language, coupled with the broad discovery obligations of Federal Rule 26(b), combine to render unmoving Plaintiffs' argument that the examination was unfair on account of Defense counsel's decision to ask questions that arose from subsequent discovery productions by Plaintiffs.

       3.     *August 30, 2005 Order*

Plaintiffs argue that Defense Counsel was not undertaking a "fair" examination because the August 30, 2005 order ("August 30 Order") limited the scope of the depositions to new discovery.  (Objections at 7.)  The August 30 Order reads, in relevant part, as follows: "The Court ruled that defendants were entitled to question the witness about discovery obtained since plaintiffs first deposition. [Defendant] would be entitled to complete its deposition of plaintiff." (Docket entry at 8/30/05.)

Plaintiffs have not shown exactly how Defense Counsel violated this Order.  In fact, Plaintiffs' discussion of the Order focuses on their alleged good faith reading thereof, in furtherance of their argument that Badke's conduct at the depositions is not sanctionable. (Objections at 10-12.)  As Defense Counsel has not been shown to have violated this Order, Plaintiffs' argument has no bearing on the fairness of the examination.

Therefore, in this action, Judge Matsumoto's failure to include in the Ruling a finding as to the "fairness" of the examinations was not clearly erroneous or contrary to law.

       B.     *Judge Matsumoto's Finding that Badke caused "any impediment, delay, or other conduct that frustrated the fair examination of the deponent"*

The allegations of error put forth in Plaintiffs' Objections are many.  Although Plaintiffs

claims the Ruling contains "clearly erroneous conclusions and misinterpretations of law and fact," this Court finds instead that Plaintiffs' Objections contain misinterpretations of law and fact, as well as statements taken out of context and/or grossly overstated, without offering any case law in support of a finding of error on the part of Judge Matsumoto.

For example, one theme of Plaintiffs' Objections is that the Ruling "sets an extremely dangerous precedent and places attorneys in a no-win dilemma – satisfy their ethical obligations to their clients or be sanctioned." (Objections at 1.) Plaintiffs argue that their misconstruction of the May 3 and August 30 Orders should not be the basis of an award of sanctions. (*See*, *e.g.*, Objections at 11 ("[W]e do find fault with the Ruling to the extent that the Court sanctions plaintiffs' counsel for not knowing what the Court may have meant."); *see also id.* at 2 ("[T]he Ruling appears to stand for the proposition that sanctions under Rule 30(d)(3) are appropriate because, in hindsight, after the Court 'clarified' its orders, plaintiffs' counsel was ultimately misguided in making them."); *id.* at 8 ("[C]ounsel could not ethically have permitted them to answer questions outside the scope of discovery"); *id.* at 12-13 ("The propriety of plaintiffs' counsels objections and instructions not to answer should be measured at the time they were made, not in hindsight."). Plaintiffs are correct that hindsight evaluation of the propriety of objections should not be the basis for the imposition of sanctions. However, Plaintiffs have not shown that the Ruling was based on hindsight evaluation.

In imposing sanctions under Rule 30(d)(3), Judge Matsumoto held

> to the extent that plaintiffs' counsel's objections, demands that Jeneric's counsel justify his questions, and instructions not to answer were grounded in his mistaken belief that certain questions were not within the scope of the Court's orders, or were improper for a fact witness, *he should have sought clarification or further ruling from the Court on the matter, rather than continuing to impede the progress of the deposition. Plaintiffs' counsel does not adequately explain his*

6

> *failure to seek a ruling from the Court regarding questions that he repeatedly claimed were in violation of the Court's orders or otherwise exceeded the scope of discovery.*"

(Ruling at 14-15) (emphasis added). Thus, Badke's choices were not "satisfy [his] ethical obligations or be sanctioned." Despite being on vacation at the time, Judge Matsumoto had already made herself available for the resolution of discovery-related disputes, and Plaintiffs' suggestion that neither she nor any other jurist would have been available to resolve other disputes that arose is not only without merit, but incredible. (*See*, *e.g.*, Objections at 21 "Plaintiffs' counsel could not fairly have been expected to contact the Court again.") Therefore, Judge Matsumoto did not "clarify Orders after a deposition and then hold counsel responsible for relying on the Orders as issued," Objections at 13, as Plaintiffs claim. *See Learning Int'l v. Competence Assurance Sys.*, 1990 WL 204163, at *3 (S.D.N.Y. Dec. 13, 1990) ("If counsel objected to what he regarded as forays into matters that were not to be the subject of the deposition, he could have sought a ruling from the court.")

Additionally, Plaintiffs argue that "[t]he Magistrate Judge has characterized two comments of plaintiffs' counsel *made at Dr. Sicurelli's deposition* as 'unprofessional and inappropriate.'" (Objections at 16) (emphasis in original). Plaintiffs attempt to explain these statements (and counsel's departure from the deposition room) as either necessary or excusable in light of Defense Counsel's conduct. However, an examination of the August 30 deposition of Dr. Sicurelli and August 31 deposition of Dr. Masyr reveals many other comments and unwarranted interruptions on the part of Plaintiffs' counsel including the following:

   1. "I will say, Mr. Cass, if this type of questioning continues, I'm just going to shut it down." (Transcript of Dr. Robert Sicurelli August 30, 2005 Deposition ("Sicurelli Tr.") at 8.)

7

2. "You might be asking questions of an empty chair, okay?" (*Id.* at 9, lines 8-9.)
3. "You might be asking questions of an empty chair." (*Id.* at 9, lines 16-17.)
4. In response to Defense counsel's statement "If you want to get up and walk out, we'll call the Judge," Plaintiffs' counsel responded "You can call the Judge all you want." (*Id.* at 9.)
5. "So, I think your time is up. And it was up before we started." (*Id.* at 98.)
6. In response to Defense counsel's statement, "I'm not going to explain every question," Plaintiffs' counsel responded, "You sure are." (Transcript of Dr. Samuel Masyr August 31, 2005 Deposition at 19.)
7. "You can ask all you want, but your clock is ticking Mr. Cass. And so I'm going to caution...and we can do this for the remainder of your time." (*Id.* at 29.)
8. "Maybe [Defense counsel] need[s] some instruction from [the witness] on what's privileged." (*Id. at* 30.)
9. "Sometimes Mr. Cass, I'm afraid to say you require some instruction on proper behavior at a deposition." (*Id.*)
10. "I suggest you use your time more wisely." (*Id.* at 32.)
11. Before leaving the deposition room, Plaintiffs' counsel said, "Keep asking your questions. When you're done, you can call us back in. Keep the clock running, too, on the time." (*Id.* at 65.)

These comments, in addition to the ones specifically mentioned in the Ruling,[1] adequately (if not overwhelmingly) support Judge Matsumoto's finding that the imposition of sanctions was proper, and that Badke's conduct was not "warranted either by the letter or spirit of [the]...August 30, 2005 order, or the broad scope of discovery prescribed by Fed. R. Civ. P. 26(b)." (Ruling at 8.)

C. *Analogous Case Law*

Finally, Plaintiffs argue that "there is no law to support the ruling," by distinguishing certain cases mentioned (and not necessarily relied upon) in the Ruling.

[1] The comments specifically mentioned in the Ruling are "You really scare me now...You've totally got me shaking in my shoes now," Sicurelli Tr. at 16, and "Was that while you were in traffic court, Mr. Cass?" (*Id.* at 89.)

Plaintiffs argue that in *Morales v. Zondo Inc.*, 204 F.R.D. 50 (S.D.N.Y. 2001), sanctions were based on "truly egregious conduct" and that there, "unlike here, there simply was no reason for the defending attorney's objections, interruptions and instructions not to answer." (Objections at 19-20.) Plaintiffs offer no support for the belief that there was "simply no reason" for the sanctioned attorneys conduct in *Morales*.

Plaintiffs then argue that because the court in *Phillips v. Manufacturers Hanover Trust Co.*, 1994 U.S. Dist. LEXIS 3748 (S.D.N.Y. Mar. 29, 1994), refrained from imposing sanctions despite the unwarranted conduct of counsel, *Phillips* does not support the Ruling. (Objections at 20.) However, the *Phillips* court refrained from awarding sanctions in part because of "the newness [in 1994] of the amendment to Rule 30" and specifically stated that "the challenged conduct...is precisely the sort the drafters of the amendment to Rule 30 intended to address." *Phillips*, at *7; *see also id.* at n.1 ("Depositions frequently have been unduly prolonged, if not unfairly frustrated, by lengthy objections and colloquy, often suggesting how the deponent should respond.") (*quoting* Advisory Committee Note). Judge Matsumoto's reliance on *Phillips* was not clearly erroneous.

Plaintiffs' attempts to distinguish the facts of *Unique Concepts Inc. v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987), *SS&J Morris, Inc. v. I. Appel Corp.*, 2000 U.S. Dist. LEXIS 10381 (S.D.N.Y. Jul. 26, 2000), and *Learning Int'l* are all misplaced, as those cases all involved the imposition of sanctions under § 1927, which Judge Matsumoto specifically refrained from invoking, having found that Plaintiffs' counsel's conduct did not rise to the level of bad faith. (Ruling at 16.)

The Court notes in closing that Plaintiffs have offered no case law in support of their

9

various arguments that the award of sanctions under the circumstances highlighted herein is clearly erroneous or contrary to law.

## CONCLUSION

This Court has reviewed the remainder of Plaintiffs' claims and finds them to be without merit. For the foregoing reasons, the Plaintiffs' objections are denied and the December 30, 2005 Order of Judge Matsumoto imposing sanctions on Plaintiffs' counsel and ordering a further deposition of Drs. Sicurelli and Masyr is AFFIRMED.

SO ORDERED.

Dated: March 10, 2006
Brooklyn, NY

_____S/_____
SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE