UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

ROBERT SICURELLI *et al.*,

               Plaintiffs,
  -against-                     **MEMORANDUM & ORDER**

                                      03-CV-4934 (SLT) (KAM)
JENERIC/PENTRON INC. *et al.*

               Defendants.

----------------------------------------X
MATSUMOTO, United States Magistrate Judge:

       This patent infringement action has been referred to the undersigned for general pretrial supervision. Presently before the Court is the motion of Jeneric/Pentron, Inc., Pentron Clinical Technologies, LLC and Pentron Corporation, Inc. (collectively, "Jeneric/Pentron") to compel the production of certain documents, in plaintiffs' possession. The documents were subpoenaed by Jeneric/Pentron from Hi-Rel Laboratories, Inc. ("Hi-Rel"), an entity which purportedly conducted scanning electron microscopy ("SEM") tests of Jeneric/Pentron's dental posts which are the subject of this litigation. Specifically, in addition to all documents and things considered by plaintiffs' expert, Dr. Anthony Storace, in formulating his opinion and expert report, Jeneric/Pentron seeks production of "any and all documents and things, including . . . photographs . . . exchanged between [plaintiffs' litigation counsel] Ropes & Gray and Hi-Rel . . . . [,]" and any and all documents that mention, refer or

-1-

relate to the instant law suit or any of the parties thereto. (Doc. No. 183, Affirmation of Michael Burling, Esq. dated Apr. 3, 2006 ("Burling Aff."), Ex. D, Subpoena to Hi-Rel, Schedule A, ¶¶ 4-6.)

Plaintiffs do not oppose the production of all materials considered by Dr. Storace in formulating his opinion and expert report. Instead, plaintiffs assert the work product privilege as to other documents relating to Hi-Rel's testing, specifically, testing commissioned by plaintiffs both prior to and following the commencement of this litigation. (See generally, Doc. No. 182, Plaintiffs' Memorandum of Law in Opposition to Motion to Compel ("Pls. Opp'n MOL").) Plaintiffs also dispute Jeneric/Pentron's contention that all materials prepared by or otherwise exchanged between plaintiffs and Hi-Rel, regardless of whether such materials were considered by Dr. Storace, should be produced because they have been placed "at issue." (Id. at 6-10.) Dr. Storace has declared under oath:

> I have no knowledge of the testing conducted by Hi-Rel with Dr. Sicurelli and Ropes & Gray, and I did not consider it in forming my opinions in this case. No person at Hi-Rel made reference in my dealings with them to any previous work having been performed for Dr. Sicurelli, Dr. Masyr, or Ropes & Gray. I have produced all materials that I considered in forming my opinions in the above-captioned matter.

(Burling Aff., Ex. A, Declaration of Dr. Anthony Storace dated Mar. 30, 2006 ("Storace Decl."), ¶¶ 8-9.)

For the reasons set forth below, the Court finds that

(i) documents relating to plaintiffs' pre-litigation SEM testing, and plaintiffs' litigation counsel's SEM testing, of Jeneric/Pentron's dental posts are protected by the work product privilege; (ii) Jeneric/Pentron has not demonstrated the requisite "substantial need" for the privileged materials sufficient to overcome work product protection; and (iii) plaintiffs have not otherwise placed such materials "at issue" so as to have waived work product protection.  Accordingly, Jeneric/Pentron's motion to compel is denied without prejudice.

## **DISCUSSION**

The work product doctrine provides qualified protection from discovery of "documents and tangible things . . . prepared in anticipation of litigation" unless the party seeking discovery demonstrates a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."  Fed. R. Civ. P. 26(b)(3).  The purpose of this doctrine is to protect from disclosure materials reflecting "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  Id.

## A. Applicability of the Work Product Doctrine

"[T]hree conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." In Re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982). The burden of establishing all three elements of the work product privilege rests with the party invoking the privilege. In re Grand Jury Subpoena Dated Dec. 19, 1978, 599 F.2d 504, 510 (2d Cir. 1979). There is no dispute regarding the first and third prongs of this tripartite test.

With respect to the second prong — whether the document was prepared in anticipation of litigation — this Court has previously determined that one of the SEM tests was "commissioned by and for plaintiffs in their anticipation of litigation against Jeneric," prior to the commencement of this litigation ("pre-litigation testing"). Sicurelli v. Jeneric/Pentron, No. 03-CV-4934, slip op. at 13-14 (E.D.N.Y. May 3, 2005) ("May 2005 Order"). This Court ruled that the documents relating to that test were "developed by the plaintiffs in the context of the plaintiffs' potential litigation against Jeneric . . . and [were] protected from disclosure as plaintiffs' work product and may not be disclosed . . . without plaintiffs' consent." Id.; see also

Jeneric/Pentron, No. 03-CV-4934, slip op. at 9 (E.D.N.Y. June 16, 2005) ("Order on Reconsideration") (on reconsideration, holding that documents relating to the results of SEM testing of dental posts commissioned by plaintiffs were work product "because the record established that plaintiffs commissioned the test to aid them in their anticipated litigation").

Moreover, the Court finds that documents relating to the results of the SEM tests commissioned by plaintiffs' litigation counsel, Ropes & Gray, LLP, and conducted during the course of litigation, also qualify as work product. A review of plaintiffs' privilege log regarding "Withheld Documents Submitted by Third-Party Hi-Rel Laboratories, Inc.," indicates that plaintiffs' litigation counsel commissioned tests in connection with the instant action on September 9, 2004, nearly one year after the filing of the Summons and Complaint on September 26, 2003, and that Hi-Rel provided the results of its testing to plaintiffs' counsel on or about December 9, 2004. (See Doc. No. 178, Affirmation of William J. Cass, Esq. ("Cass Aff."), at Ex. A, Privilege Log.) Accordingly, plaintiffs have satisfied the elements necessary to establish the applicability of the work product privilege to the disputed documents.

B.   **Substantial Need for the Protected Documents**

"Even where the applicability of the work product

doctrine has been established, factual material may be ordered produced 'upon a showing of substantial need and inability to obtain the equivalent without undue hardship.'" In re Omeprazole Patent Litig., No. M-21-81, 2005 WL 818821, at *9 (S.D.N.Y. Feb. 18, 2005) (quoting Upjohn Co. v. United States, 449 U.S. 383, 400 (1981)); In re Grand Jury Proceedings, 219 F.3d 175, 190-191 (2d Cir. 2000) ("A party seeking discovery of attorney work-product must show substantial need, for fact work-product. As for work-product that shows mental impressions, conclusions, opinions, or legal theories of an attorney, . . . at a minimum such material is to be protected unless a highly persuasive showing [of need] is made.") (internal citations and quotation marks omitted).

"Substantial need is not evaluated in a vacuum, and in order to overcome work product protection, [defendant] must demonstrate that it cannot obtain the substantial equivalent of the information it seeks." E.E.O.C. v. Carrols Corp., 215 F.R.D. 46, 52 (N.D.N.Y. 2003) (citing Horn & Hardart Co. v. Pillsbury Co., 888 F.2d 8, 12 (2d Cir. 1989)). That does not mean that a party seeking the document must show an absolute impossibility, but rather that it is significantly more difficult, time-consuming or expensive to obtain the information from another source. Securities & Exch. Comm'n. v. Thrasher, 92 Civ. 6987, 1995 WL 46681, at *9 (S.D.N.Y. Feb. 7, 1995).

Jeneric/Pentron has not demonstrated why it could not and cannot now obtain the substantial equivalent of the information contained in the protected documents. As the Court indicated in its May 3, 2005 order, Jeneric/Pentron could have conducted its own SEM tests of its dental posts and, indeed, could have commissioned Hi-Rel to do so, just as it could have deposed the Hi-Rel employee that conducted the tests. See Tribune Co. v. Purcigliotti, 93 Civ. 7222, 1998 WL 175933 at *4 (S.D.N.Y. Apr. 14, 1998) ("'Substantial need' cannot be shown where persons with equivalent information are available for deposition.") (citing Pillsbury, 888 F.2d at 12); Atlantic Richfield Co. v. Current Controls, Inc., No. 93-CV-0950, 1997 WL 538876, at *3 (W.D.N.Y. Aug. 21, 1997) (noting that the party seeking facts in a privileged document may obtain those facts through other means of discovery); ECDC Env't v. New York Marine and Gen. Ins. Co., 96 Civ. 6033, 1998 WL 614478, at *15-16 (S.D.N.Y. June 4, 1998) ("[B]ecause the work product privilege does not protect the facts in that document (the privilege protects documents, not facts), the party seeking those facts may obtain them through other means of discovery, such as through depositions and interrogatories."). It is true that other discovery devices may be more expensive or burdensome than the production of the protected documents; however, the discovery devices do provide an alternative means for Jeneric/Pentron to

-7-

obtain the substantial equivalent and, perhaps more, without undue hardship and without impinging upon plaintiffs' work product. See In re Int'l Sys. & Controls Corp., 693 F.2d 1235, 1241 (5th Cir. 1982) (noting that although expense may be considered in determining undue hardship, "in the ordinary case, the cost of one or a few depositions is not enough to justify discovery of work product") (citation omitted)

**C. "At Issue" Waiver**

Jeneric/Pentron also contends that plaintiffs have waived any claim over the Hi-Rel documents by placing their tests of Jeneric/Pentron's dental posts "at issue." (See Doc. No. 197, Jeneric/Pentron's Memorandum of Law in Support of Motion to Compel ("Def. MOL"), at 5-8.) Specifically, Jeneric/Pentron asserts that because plaintiffs, their counsel and Dr. Storace each retained Hi-Rel to conduct tests on the allegedly infringing dental posts, plaintiffs have placed at issue all of Hi-Rel's tests relative to those dental posts.

Jeneric/Pentron correctly asserts that "waiver of work product protection may result from a party's injection of an issue into the litigation that, in fairness, requires the party to disclose otherwise protected material." Ruotolo v. City of New York, No. 03 Civ. 5045, 2005 WL 823015, at *2-3 (S.D.N.Y. Apr. 7, 2005) (citing In re Grand Jury Proceedings, 219 F.3d 175,

182 (2d Cir. 2000)). Courts have found that an "at-issue" waiver has occurred when the following factors are present:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to [its] defense.

Ruotolo, 2005 WL 823015, at *2-3 (citing Granite Partners v. Bear, Stearns & Co., Inc., 184 F.R.D. 49, 54 (S.D.N.Y. 1999)).

While plaintiffs' assertion of work product protection is the direct result of their commencement of this action, thus satisfying the first factor, the Court is not convinced that, with respect to the second factor, plaintiffs have placed the protected documents "at issue" by making them relevant to this case. Whether plaintiffs have placed their pre-litigation testing and the testing commissioned by their counsel at issue depends upon whether that information was considered by Dr. Storace in formulating his expert opinion and report or whether plaintiffs otherwise intend to rely on that information.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, which governs disclosures by expert witnesses, mandates the disclosure of, among other things, "the data or other information *considered* by the witness in forming the opinions . . . ." (Emphasis added). "[T]he requirement of disclosure applies not only to information actually relied upon

by a testifying expert, but also to information that was not relied upon, but considered by the expert . . . ." Schwab v. Philip Morris USA, Inc., No. 04-CV-1945, 2006 WL 721368, at *2 (E.D.N.Y. Mar. 20, 2006) (citing Construction Indus. Servs. Corp. v. Hanover Ins. Co., 206 F.R.D. 43, 50 (E.D.N.Y. 2001)).

The party resisting disclosure bears the burden of showing that an expert did not consider certain documents in forming his opinion. See Schwab, 2006 WL 721368, at *3 (citation omitted). "[T]his burden cannot generally be satisfied by the expert's representations alone . . . . The burden is met when the documents could not have been considered by the expert in forming his opinion, as when they are reviewed by the expert only after he has testified. . . . It can also be met when the party opposing disclosure presents the court with affidavits and deposition testimony clearly establishing that the testifying witness never read, reviewed, or considered the subject documents in forming his opinions." Id. (citations and internal quotation marks omitted).

The results of pre-litigation testing and testing conducted by plaintiffs' counsel following the commencement of this action are not at issue because they could not have been considered by Dr. Storace in forming his opinion. Dr. Storace's declaration reflects that he was not aware of the existence of other tests until March 2006, approximately five months following

the conclusion of his work with Hi-Rel and the preparation of his report, in November 2005. Thus, Dr. Storace could not have "considered" these tests for purposes of Rule 26(a)(2)(B) disclosure requirements. (See Storace Decl. ¶¶ 5-9; Cass Aff., Ex. D, Expert Report of Anthony Storace dated Nov. 17, 2005.)

In its reply brief relative to this motion, Jeneric/Pentron asserts that Roger Devaney, the Hi-Rel employee who allegedly performed the tests ordered by Dr. Storace, as well as the pre-litigation testing commissioned by plaintiffs and later by plaintiffs' counsel in September 2004, acted as an "agent" of Dr. Storace, or as a non-testifying expert, whose knowledge about Jeneric/Pentron's posts was disclosed to Dr. Storace, and thereby informed Dr. Storace's expert opinion. Jeneric/Pentron contends that "Roger Devaney's prior consulting relationship with Plaintiff's [sic] counsel may have influenced the sample preparation and photography of the FibreKor samples used in Dr. Storace's report. It is therefore critical for Pentron to examine the extent to which the opinion of Dr. Storace may have been based on or influenced by Roger Devaney's earlier tests and/or experiments." (Doc. No. 184, Jeneric/Pentron's Reply Brief in Support of Motion to Compel ("Def. Reply MOL"), at 7.)

While Jeneric/Pentron correctly points out that a non-testifying expert, who "is generally immune from

discovery[,]" <u>Schwab</u>, 2006 WL 721368, at *2, may be subject to the disclosure requirements of Rule 26(a)(2)(B) if the non-testifying expert's opinion or knowledge informed the testifying expert's opinion, <u>see</u> <u>id.</u> at *3, here, the alleged influence of Mr. Devaney on Dr. Storace's opinion and report is speculative. None of the cases cited by Jeneric/Pentron stand for the proposition that documents not seen, considered nor known about by a testifying expert need be disclosed where such documents are otherwise privileged. There is no indication that Roger Devaney's earlier tests or experiments influenced the preparation and photography of Jeneric/Pentron's posts discussed in Dr. Storace's report. Instead, the record reflects that Dr. Storace provided Mr. Devaney with detailed instructions regarding how he wanted the tests to be conducted and how the posts were to be photographed. There is no indication that Mr. Devaney deviated from these instructions.

With respect to the third factor in determining if there has been an "at issue" waiver — whether application of the work product privilege will deny defendants access to information vital to their defense — the Court is not convinced that non-disclosure of the protected documents will deprive defendants of such "vital" information. As previously mentioned, although the documents themselves are privileged, the underlying facts contained therein are not, and thus, Jeneric/Pentron may avail

itself of other discovery devices to obtain those facts.  See
Atlantic Richfield, 1997 WL 538876, at *3.

Accordingly, the Court does not find that the record before this Court requires plaintiffs to produce documents protected by the work product privilege.  To the extent Jeneric/Pentron has not received any Hi-Rel documents related to Dr. Storace's requested tests, all such documents shall be produced within one week of the date of this order.  Of course, if plaintiffs intend to rely on the protected documents, they shall be timely provided to all parties.  At present, however, plaintiffs have not indicated that they will rely on the documents they now claim are privileged.

**D.   Admissibility of Evidence**

The parties also dispute the admissibility of certain evidence which may be proffered at trial, including but not limited to Dr. Storace's report.  (See Def. Reply MOL, at 2-5; Doc. No. 187, Plaintiffs' Sur-Reply Brief in Opposition to Motion to Compel, at 1-7.)  The Court declines to make any determination as to the admissibility of evidence at trial at this stage in the litigation.  The parties may make any motions regarding the admissibility of evidence at trial before the trial court at the appropriate time.

**CONCLUSION**

For the foregoing reasons, Jeneric/Pentron's motion to compel is denied without prejudice.

**SO ORDERED.**
Dated:   May 16, 2006
         Brooklyn, New York

                                        _____/s/_____
                                        KIYO A. MATSUMOTO
                                        United States Magistrate Judge